Ruth Elizabeth McCormick **TANKERSLEY** et al., Plaintiffs,

v.

Joseph M. P. **ALBRIGHT** et al., Defendants.

No. 73 C 883.

United States District Court,
N. D. Illinois, E. D.

March 5, 1974.

Don H. Reuben, Lawrence Gunnels and Leo K. Wykell, Kirkland & Ellis, Chicago, Ill., for plaintiffs.

Max E. Wildman, David L. Schiavone and Thomas H. Snyder, Wildman, Harrold, Allen & Dixon, Chicago, Ill., and Paul, Weiss, Rifkin, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM OPINION

DECKER, District Judge.

This is the final chapter in an action by the Trustees of the McCormick-Patterson Trust ("M–P Trust") seeking a declaratory judgment to affirm their rights, as Trustees, to vote the shares of stock of Tribune Company ("Company"), held by the Trust, in favor of certain amendments to the Company's articles of incorporation and by-laws. The defendants are two beneficiaries of the Trust who, in correspondence to the Trustees, objected to the amendments and requested that the Trustees refrain from voting in favor of their adoption.

After an unfavorable disposition of their challenge to this court's jurisdiction, the defendants answered and filed several counterclaims. Counterclaims Four, Five and Six sought removal of the Trustees on the ground that they had violated section 12(g) of the Securities and Exchange Act, 15 U.S.C. § 78l,[1] by failing to cause the Company to register its common stock or to file proxy information with the Securities and Exchange Commission ("SEC"), and by failing to disclose material information to the beneficiaries.' The Securities and Exchange Act applies only to companies with, *inter alia*, a class of equity security held of record by 500 or more persons. The Trustees moved to dismiss the counterclaims in their entirety; as-

---

1. Section 12(g) of the Act provides in relevant part:

"Every issuer which is engaged in interstate commerce, or in a business affecting interstate commerce, or whose securities are traded by use of the mails or any means or instrumentality of interstate commerce shall—

.  .  .  .  .

(B) within one hundred and twenty days after the last day of its first fiscal year ended after two years from July 1, 1964, on which the issuer has total assets exceeding $1,000,000 and a class of equity security (other than an exempted security) held of record by five hundred or more but less than seven hundred and fifty persons, register such security by filing with the Commission a registration statement (and such copies thereof as the Commission may require) with respect to such security containing such information and documents as the Commission may specify comparable to that which is required in an application to register a security pursuant to subsection (b) of this section."

serting with respect to the SEC matters that the Company had fewer than 500 shareholders of record. All counterclaims except those involving the Securities and Exchange Act were dismissed in an opinion filed on February 5, 1974, 374 F.Supp. 538. In light of the allegations in and proof presented on Counterclaims Four, Five and Six, however, rulings on plaintiffs' motion for summary judgment on their complaint and to dismiss those counterclaims were postponed to allow defendants an opportunity to present evidence to demonstrate the existence of a genuine issue of material fact as to whether the Company shareholders of record numbered 500 or more.

The matter is now before the court on the question whether the documents submitted by the defendants at a hearing held on February 27, 1974, create such an issue of fact.[2] As presented by the parties, this question divides into two components: (1) whether the 225 beneficiaries of the Tribune-News Employees Trust are to be added to the Company's 253 shareholders of record,[3] and (2) whether an alleged increase of 54 shareholders to be derived from an examination of certain wills and trust, and nominee registrations has sufficient merit to warrant further discovery by defendants. Since the addition of 54 shareholders to the Company's 253 stockholders of record would leave defendants 193 shareholders short of 500, the exclusion of the Tribune-News Employees Trust beneficiaries as record holders would be fatal to defendants' attempt to show a genuine issue of fact.

## I. THE TRIBUNE-NEWS EMPLOYEES TRUST

### A. SEC Approach to "Held of Record"

In 1965, the SEC promulgated a rule which attempted to define the phrase "held of record" appearing in section 12(g) of the Securities and Exchange Act. Under that regulation, generally, securities identified as held of record by a trust are to be counted as one holder and securities identified as held of record by one or more persons as trustees shall be included as held of record by one person. However, there exist certain limited exceptions to this rule. Most importantly, for purposes of this case, "[s]ecurities held, to the knowledge of the issuer, subject to a voting trust, deposit agreement or similar arrangement shall be included as held of record by the record holders of the voting trust certificates, certificates of deposit, . . . or similar evidences of interest in such securities." SEC Rule 12g5–1.[4]

### B. The M–P and Tribune-News Employees Trusts

■ Prior to this litigation, apparently, no court had been required to decide whether the M–P or the Tribune-News Employees Trust ("Employees Trust") constituted a voting trust. However, in both proxy material and internal memoranda, the Tribune Company, the Trustees, and their counsel have counted the beneficiaries under these trusts as Company shareholders of record, a position supportable only if the

---

2. Defendants' discovery efforts have been curiously inconsistent. Although their counterclaims were filed in early August, 1973, defendants apparently undertook little or no discovery prior to the obvious necessity to do so under this court's February 5th opinion. Since then, they have reviewed thousands of pages of documents produced by plaintiffs. The Trustees have represented to the court that all relevant evidence has been produced. Judging from the volume of material presented at the hearing, and the arguments with respect thereto, defendants' examination of

these documents must have been intense. Under these circumstances, defendants cannot seriously contend that they have been denied a realistic opportunity to support their counterclaims.

3. See section I.B. *infra.*

4. The issuer, in determining whether a holder identified of record as a trust is a voting trust, may rely in good faith upon the information it receives in response to its request from a non-affiliated issuer of the certificates or evidences of interest. SEC Rule 12g5–1(b)(1).

securities were deemed to be held subject to "a voting trust, deposit agreement or similar arrangement." For example, in the proxy material sent to the stockholders concerning the April, 1973, annual meeting, the Board of Directors stated that the Company had 478 shareholders. This figure was computed as follows:

| | |
|---|---|
| Tribune Company stockholders of record | 124 |
| Beneficiaries of M–P Trust | 129 |
| Beneficiaries of Tribune-News Employees Trust | 225 |
| | 478 |

The inclusion of these beneficiaries by the Trustees and their associates has not estopped the plaintiffs from arguing that such action was not required by law. Counsel responsible for computing the number of Company shareholders has submitted an affidavit explaining that the trusts' beneficiaries were counted as a precautionary measure. There existed uncertainty as to the interpretation to be accorded SEC Rule 12g5–1, and the Company did not want to be compromised by a ruling which would have required the beneficiaries to be counted, thus placing the Company very close to the 500 shareholder mark. In any event, plaintiffs' categorization of the beneficiaries is not binding upon this court, as the matter is one of law to be decided by the court, not by the parties.

Plaintiffs' caution with respect to the M–P Trust has proven to be justified. In light of this court's February 5, 1974, opinion holding that the M–P Trust was a voting trust, the beneficiaries thereunder must be taken into account under SEC Rule 12g5–1.

Plaintiffs now contend that, under the criteria set forth in that opinion, the Employees Trust cannot be deemed to be a voting trust, and, therefore, that its beneficiaries are not includable in the Company's shareholders of record.

The Employees Trust was created in March, 1937, by 38 executives, department heads, and assistant department heads, who had been with the Company for at least five years.[5] As described in the trust instrument, the employees had joined together and purchased from Robert R. McCormick certain beneficial interests in the M–P Trust. The beneficial interests so purchased by the employees comprised 47/1070ths of the entire beneficial interests of that Trust. The trust instrument provided that the Employee Beneficiaries desired the trustees thereunder (hereinafter referred to as Agents)[6] to regard the aggregate of the beneficial interests as a "single undivided beneficial interest." The apparent purpose of the trust was to assure that the respective shares of the initial employee-participants would be owned continuously by employees of the Company or its subsidiaries, or by beneficiaries of the M–P Trust. To realize this objective, purchase options were granted to persons included within those groups.

Under the trust document, the employees conveyed all right, title and interest in and to their M–P Trust units to three fellow participating employees as trustees (Agents), in trust, for the use and benefit of the Employee Beneficiaries.

The Agents were granted various powers, among them:

(1) to collect and receive from the M–P Trustees any and all monies dis-

---

5. As shown by the figures computed by plaintiffs, the number of beneficiaries of the Employees Trust has grown from 38 to 225. Of these, 11 are already counted as shareholders of record because of their positions as beneficiaries under the M–P Trust, and, thus, would be excluded to avoid a double count. Accordingly, the relevant number of Employee

Beneficiaries is 214. In oral argument, plaintiffs contended that the number of beneficiaries had decreased by another 10 persons.

6. The Employees Trust instrument refers to the three trustees as Agents, and, for purposes of this opinion, this appellation will serve to distinguish them from the M–P Trustees.

tributable by those Trustees to holders of the "Employees' Aggregate Beneficial Interest" in the M–P Trust;

(2) to hold any stock of the Company or other property received by the Agents as holders of a beneficial interest in the M–P Trust upon the termination of that Trust prior to the termination of the Employees Trust;

(3) to take any action or sign any instrument necessary to continue the M–P Trust beyond its termination date;

(4) to join in the execution of any new agreement designed substantially to effect the purposes of the M–P Trust;

(5) to take any action or to give any consent permitted a beneficiary under certain provisions of the M–P Trust; and

(6) to vote any stock of the Company or any other company received by the Agents as owners of a beneficial interest or interests in the M–P Trust upon termination of that Trust.[7]

Upon the occurrence of specified "option events", opportunities to purchase the beneficial share of the Employee Beneficiary involved are accorded successively to Robert R. McCormick, Joseph M. Patterson,[8] the President of the Company, a majority of the Agents, and, finally, the Employee Beneficiaries.

■■ There would appear to be no question but that this instrument did not create a voting trust. Of the three criteria generally recognized for such a trust,[9] none is present in the Employees Trust agreement. The *critical factor*, from which the other criteria flow, is the separation of stock voting rights from the other attributes of stock ownership.

But under the Employees Trust instrument, no voting rights of any kind are transferred. The beneficiaries had none to convey, as such rights were already held by the Trustees of the M–P Trust.

Indeed, defendants do not contend that the Employees Trust is a voting trust. Rather, they maintain that it "created no trust at all," but is "a mere shareholder agreement," and that the Employee Beneficiaries should be included in the shareholder count pursuant to SEC Rule 12g5–1 by virtue of being owners under the M–P Trust, a voting trust. Defendants' evaluation of the Employees Trust, however, is inaccurate, for that agreement satisfies all the essentials of a formal trust. The instrument contains a declaration of trust by the employees for their benefit, and recites consideration. Units of beneficial interest in the M–P Trust comprise the trust corpus. Three of the original employee-participants are declared, and accepted appointments as, trustees. The beneficiaries are identified, and, finally, the duties and powers of the trustees are enumerated. See Richie, Alford & Effland, Decedents' Estates and Trusts 380–414. (4th ed. 1971). In light of these characteristics, it is clear that the Employees Trust is an ordinary trust.

■ That determination, however, does not prevent the inclusion of the Employee Beneficiaries as shareholders of record for SEC purposes, because Rule 12g5–1 embraces those who hold certificates evidencing interests in "[s]ecurities held . . . subject to a voting trust, deposit agreement or similar arrangement." Thus, the next question is whether the securities held by the Agents come under that clause, in

---

7. The Agents are also given power to represent the Employee Beneficiaries in legal proceedings, to employ counsel and other persons they deem necessary, and to pay taxes in connection with the Trust.

8. Both Messrs. McCormick and Patterson are deceased.

9. The tests are as follows: (1) the voting rights of the stock are separated from the other attributes of ownership, (2) the voting rights

granted are intended to be irrevocable for a definite period of time, and (3) the primary purpose of the grant of voting rights is to acquire voting control of the company. See Lehrman v. Cohen, 43 Del.Ch. 222, 222 A.2d 800 (1966); Abercrombie v. Davies, 36 Del. Ch. 371, 130 A.2d 338 (1957); 5 Fletcher, Cyclopedia of the Law of Private Corporations § 2075, at 367–68 (Perm. ed. 1967); Bogert, Trusts & Trustees § 251 (2d ed. 1964).

view of the interrelationship between the M–P Trust and the Employees Trust.

It is true that the corpus of the Employees Trust consists of units of beneficial interest in the M–P Trust, purchased from Robert R. McCormick. As defendants claim, the Agents may serve essentially as conduits for dividends between the M–P Trustees and the Employee Beneficiaries. With this exception, the M–P Trustees operate with respect to the Employee Beneficiaries in the same manner as with the M–P Trust beneficiaries.

But these observations do not necessitate the conclusion that the M–P Trust determines the relation between the Agents and the Employee Beneficiaries. The Employees Trust agreement established, and continues to control, that relationship. The Agents do not look to the M–P Trust for their obligations and authority, except as the Employees Trust instrument refers to the M–P Trust to set forth the actions which may be taken by the Agents in their capacities as "beneficiaries" under the M–P Trust. Further, there exist telling distinctions between the two trust instruments. The Employees Trust, although it refers to the M–P Trust, is by no means a mirror image or duplication of that document.

The beneficial interests owned by the Employee Beneficiaries are burdened with severe restrictions on alienability. As noted above, these limitations are designed to keep the beneficial interests within a particular group of persons; any attempted transfer or assignment not sanctioned by the agreement is void. In fact, no units have been transferred to anyone besides employees or their families. In contrast, the beneficiaries under the M–P Trust "reserve[d] the right to dispose of their respective interests . . . or any part thereof in any manner . . . by any means and

for any purpose," with the proviso that the transfer would not be binding upon the Trustees until an appropriate copy of the transfer had been accepted by the Trustees.

Further, the agreements differ in terms of duration. The Employees Trust may be terminated by the written concurrence of all Employee Beneficiaries, but will terminate in any event at the expiration of 21 years after the death of the last survivor of the original employee-participants. The M–P Trust instrument was executed in May, 1932, and is to continue in existence until terminated in writing by beneficiaries holding 87.75% of the total beneficial interest, but, pursuant to another clause, will end on April 1, 1975. Upon termination of the M–P Trust, the Agents will receive the Enployee Beneficiaries' shares therein and will continue to act under the terms of the Employees Trust.

Despite the apparent reliance of the Employees Trust upon the M–P Trust, therefore, the former is a separate entity. The termination of the latter next year will not be the death knell of the Employees Trust.

Thus, it is clear that the Agents do not hold "subject to" the M–P Trust; instead, they hold under the Employees Trust. Since that agreement is not a voting trust, the securities held pursuant thereto cannot be deemed to be held subject to a voting trust. Accordingly, the general rule that stock held by a trust shall be included as held of record by one person controls this case.[10] The caveat to SEC Rule 12g5–1 does not apply and the 214 non-duplicitous Employee Beneficiaries [11] may be ignored for purposes of the 500 shareholder rule.

## II. INCREASE UNDER WILLS AND TRUSTS, and NOMINEE REGISTRATIONS

Defendants also maintain that the Company has miscounted its sharehold-

---

10. Since the Employees Trust is an ordinary trust, and not a voting trust, *a fortiori*, it is not a deposit agreement or similar arrangement.

11. See note 5 *supra*.

ers of record under the SEC rules concerning wills and trusts, and nominee registrations. They attempt to support this contention with a memorandum and a voluminous appendix of exhibits in which they compare Company stockholder lists with various wills and trusts, and correspondence involving nominees.

### A. Wills and Trusts

Defendants note that several trusts, the corpus of which contain Tribune Company stock, divide the trust fund into a number of shares, or, in some cases, separate, equal trusts. They argue that the plaintiffs either have ignored these subdivisions and continued to count the trust agreement as one or have not recorded the increase in its entirety. Defendants also argue that, in situations where parties have become Company shareholders through will distributions to them as legatees, they should be counted as shareholders of record. In this regard, defendants point to wills and correspondence in Company and counsel files indicating that a number of testators who owned Company stock have died and that the stock has been or should have been distributed among several people not already listed as shareholders of record. An increase of 17 stockholders of record is sought based upon this evidence.

For a number of reasons, however, this evidence is of minimal value to the defendants. First, merely because a single trust agreement divides the corpus into a number of shares does not transform the arrangement into several trusts, each to be counted as a separate entity. Secondly, it is clear from defendants' own evidence that plaintiffs,. in fact, did count the trust subdivisions in some situations, for example, where the trust agreement created a voting trust. Third, the stockholder list contained in the appendix was dated March 2, 1973, whereas the testamentary distributions relied upon occurred in October and November of that year, and, thus, could not possibly have been reflected in the list. Plaintiffs represented to the court that any increase in shareholders occasioned by this type of distribution has been registered; an affidavit of the attorney primarily responsible for this aspect of Company records, although made on November 2, 1973, supports this representation by its statement that there had been no material increase in the number of Company shareholders since the institution of the suit.

### B. Nominee Registrations

Defendants contend that an increase in shareholders is also evident from a survey of documents pertaining to stock registered in the names of nominees. Securities Exchange Act Release Number 7492, explaining Rule 12g5–1, noted that the SEC had decided not to adopt a provision that securities held in the name of a broker, dealer, or bank, or nominee for any of them, and held in customer's accounts should be counted as held of record by the number of separate accounts for which the securities are held. As a foundation for their claims on this topic, defendants rely upon SEC Rule 12g5–1(b)(3), which provides:

"[i]f the issuer knows or has reason to know that the form of holding securities of record is used primarily to circumvent the provisions of section 12(g) . . . of the Act, the beneficial owners of such securities shall be deemed to be the record owners thereof."

Defendants present three general categories of evidence in support of their allegation that plaintiffs are in violation of this Rule. They document instances in which shareholders apparently transferred their shares to nominees and the Company noted on its records that the transaction decreased the number of shareholders. In other correspondence, shareholders requested the Company to cancel their stock certificates and to reissue the same number of shares, some to a nominee and the balance to the original stockholder. Lastly, defendants point to occasions on which the Company received requests from investment banking firms for several sets of proxy

material and return envelopes, to "enable [the firm] to prepare and mail individual proxies to [its] clients, for whom [it held] shares registered in the name of [its] nominee(s)."

Even assuming arguendo that the foregoing "nominee evidence" indicates some increase in shareholders, it is hardly of any probative value in alerting the Company that the form of holding is being used principally to avoid the responsibilities of the Securities and Exchange Act. Further, it is too much of a stretch to conclude, as defendants have, that a shareholder increase of 20 persons is warranted by a trust company's request for twenty proxy statements and return envelopes. Lastly, it is apparent that some of the documents relied upon by the defendants were never seen by the Company, but were held in the files of their attorneys in connection with a federal estate tax inquiry.

### C. Ensemble

Plaintiffs take the position that none of defendants' contentions in the wills, trusts, and nominee contexts has any merit. But even accepting each of defendants' arguments, the number of shareholders of record would increase by only 54 persons, which, when added to the acknowledged 253 shareholders, hardly creates an issue of fact whether the Company has 500 stockholders.

### III. CONCLUSION

The court has determined that the Tribune-News Employees Trust is an ordinary trust, and, thus, that its beneficiaries need not be counted as Company shareholders of record. Secondly, the court has concluded that the vast majority of defendants' contentions as to plaintiffs' low shareholder count are without merit but, even if they were accepted *in toto*, the increase would be markedly insufficient. It is, therefore, clear that no genuine issue of material fact exists as to whether the Company has 500 or more shareholders of record.

Accordingly, Counterclaims Four, Five and Six are hereby dismissed and judgment is hereby entered in plaintiffs' favor on their complaint for declaratory judgment. Plaintiffs will prepare and, after notice to defendants, submit a proper judgment order.