**DHL CORPORATION et al.,**
**Appellants,**

v.

**LOOMIS COURIER SERVICE,**
**INC., Appellee.**

No. 74–1215.

United States Court of Appeals,
Ninth Circuit.

Aug. 7, 1975.

Larry L. Hillblom (argued), Honolulu, Hawaii, Peter Donnici (argued), San Francisco, Cal., for appellants.

Michael Salinsky (argued), San Francisco, Cal., for appellee.

## OPINION

Before TUTTLE,* KOELSCH and BROWNING, Circuit Judges.

TUTTLE, Circuit Judge:

Upon a complaint filed by Loomis Courier Service, Inc., the trial court entered an injunction on November 2, 1973 which, by its terms, became effective on December 21, 1973, permanently enjoining DHL Corporation and named officers "from undertaking and from offering to undertake the carriage by air in interstate and foreign commerce of the property of other persons and from holding themselves out as legally qualified to do so." (The air carrier activity here referred to is that of an "air freight forwarder.") On December 19, 1973, two days prior to the effective date of this injunction, the Civil Aeronautics Board issued an order specifically and expressly authorizing DHL to do precisely those things which the trial court had enjoined.

Loomis Courier Service, Inc., the plaintiff, was the holder of an "operating authorization" from the C.A.B. to act as an air freight forwarder. Loomis bases its right to sue on § 1007(a) of the Federal Aviation Act of 1958, 49 U.S.C. § 1487(a), which provides that any "party in interest" may sue to enjoin any violation of § 401(a) of the Act, 49 U.S.C. § 1371(a) which prohibits any person from acting as an air carrier "unless there is in force a certificate issued by the Board authorizing such air carrier to engage in such transportation." [1] It is conceded that at the time of the filing of this suit DHL did not have such a certificate, nor did it have an "operating authorization" which, as a freight forward-

er, and as discussed below, it was required to have under Civil Aeronautics Board regulations rather than a certificate of public convenience and necessity.

Loomis contended simply that it held an "operating authorization;" that DHL did not; that DHL was engaged in air carriage in competition with Loomis; that Loomis was a "party in interest;" and that, therefore, the trial court should enjoin DHL from continuing its operation because of its failure to obtain the authorization.

DHL defended both on jurisdictional grounds and on the merits. The jurisdictional grounds were at least two-fold: 1) that Congress placed primary jurisdiction in the Civil Aeronautics Board to determine whether an operational authorization should issue to an applicant. DHL argues that because Congress placed in the Board the authority to use its discretion and expertise in determining whether, pending the issuance of an authorization, a person seeking such authorization should be permitted to continue its unapproved activities as being in the public interest, the Court should not intervene to make this determination while the matter was pending before the Board itself. DHL points to the fact that it had an application pending from April of 1972 seeking operational authority for carrying on domestic and international air freight forwarding and that the plaintiff Loomis had entered the fray before the C.A.B. by opposing the grant of the authorization and subsequently filing a motion with the C.A.B. to require DHL to show cause why it should not be subjected to a cease and desist order while the Board gave consideration to its application. These C.A.B. proceedings continued during the pendency of this litigation before the district court.

2) The second defense made by DHL on jurisdictional grounds is its contention that its failure to obtain an operational authorization was not a violation of

---

* Honorable Elbert P. Tuttle, United States Circuit Judge, Fifth Circuit, sitting by designation.

1. This section is headed "Certificate of public convenience and necessity—Essentiality."

§ 401(a) because under powers granted to it by the statute, the C.A.B. had issued regulations which exempted air freight forwarders from the provisions of that section. Thus, the argument runs, although other *regulations* still require DHL to obtain an operational authorization, its failure to do so is a violation not of the statute but of the *regulations,* and that the statute does not authorize a "party at interest" to file suit in the federal court for the violation of one of the C.A.B. *regulations,* as contrasted to a violation of the statute itself. Thus, Loomis could not assert the statutory cause of action created by § 1007(a) of the Act.

▆▆▆ Because we agree with DHL's position with regard to this issue, we discuss it first. To begin with, we recognize that an air freight forwarder is not required to have a "certificate of public convenience and necessity," which is the certificate prescribed in the statute as to air carriers generally (*see* footnote 1, *supra.*) Next, it is clear that the C.A.B. has the power under § 416 of the Act, 49 U.S.C. § 1386, to exempt from the requirements of 401(a), individual air carriers or classes of air carriers. Furthermore, it is not disputed that the C.A.B., by regulations, adopted parts 296 and 297 (21 Fed.Reg. 2511) creating a class of indirect air carriers designated "air freight forwarders." Then, regulation § 296.11 (14 C.F.R. § 296.11) provides as follows:

> "*Subject to the other provisions of this part,* air freight forwarders are hereby relieved . . . from all the provisions of Title IV of the Act." [Emphasis added.]

But for the provision "subject to the other provisions of this part," it would be clear that this would be a blanket exemption of air freight forwarders from the requirements of § 401(a). To support its claim that it is not an absolute exemption, Loomis relies on the requirements of § 296.41, admittedly a saved provision of "this part," which provides that

"no person shall operate as an air freight forwarder, within the meaning of this part, unless there is in force with respect to such person a document entitled 'operating authorization' authorizing him to engage in air transportation pursuant to the *general exemption* granted by this part." [Emphasis added.]

Loomis takes the position that the failure of DHL to comply with this requirement is a violation of § 401(a) and this triggers the application of the "party at interest" provision of that statute, thereby permitting it to file suit in the district court. DHL, to the contrary, contends that the failure to obtain the operating authorization is a violation of the regulation only, and for such a violation there is no statutory authorization for a "party at interest" to sue.

The language of this exemption, referred to in § 296.41 as a "general exemption granted by this part," seems to us to favor the latter viewpoint. Section 296.11 does not say that after the other provisions of this part have been complied with air freight forwarders will be relieved from the provisions of § 610(a)(4). It says merely that air freight forwarders are relieved from the provisions of § 610(a)(4) subject to the other provisions "of this part." One such provision, likewise a regulation, says that no person shall *operate* as an air freight forwarder until he has an "operating authorization."

Our view that this is a proper construction of the regulations is strengthened by the fact that it is apparent that the type of "operating authorization" that is obtained by a freight forwarder is quite different from the "certificate of public convenience and necessity" typically required of the air carriers who own and operate fleets of airplanes. The standards governing issuances of such authorizations are entirely different. There is here no requirement that the applicant show any public convenience or necessity. Entry into this field appears to be generally open to those

whose applications, ordinarily granted without a hearing, carry evidence of ability to perform the contracts which are undertaken. There is no quasi-monopoly involved.

■ Moreover, we believe these differences in the kind of authorization required in regulation 296.41 and the certificate of public convenience and necessity required under § 401(a) of the statute suggest that Congress likely had the intent to let a "party at interest" file suit only where the strict requirements of the statute itself were being violated, leaving to the Board the power to police violations of its own regulations. Furthermore, if we were to hold that a "party at interest" could file suit for the kind of violation here involved, we would be required to determine who was a "party at interest" in such a situation. While it seems to be well-established that a certificated competitor who has lost customers to a violater of § 401(a) is a "party at interest," *Monarch Travel Services v. Associated Cultural Clubs,* 466 F.2d 552 (9th Cir. 1972) quite a different standard might apply where the party is the holder only of an "operational authorization" under C.A.B. regulations—an authorization that is conferred with far fewer requirements and granted much more freely.

We note that it seems quite unnecessary and uneconomical of judicial time and energy for a court to conduct hearings producing eleven volumes of record and transcript to determine whether to enjoin conduct which the court, as here, explicitly recognized was to be authoritatively judged by the C.A.B. The confusion engendered by such dual proceedings is aptly shown by the facts of this case: the district court and the C.A.B. came to conflicting decisions within two days of each other. The question naturally arises whether such a question, requiring not only C.A.B. expertise in determining national policy, but also the exercise of *C.A.B. discretion,* is not one which under the broad principles announced by the Supreme Court in *Hughes Tool Co. v. Trans World Airlines,* 409 U.S. 363, 93 S.Ct. 647, 34 L.Ed.2d 577 should be left to the C.A.B. until it has made its decision. *See Price v. Trans World Airlines, Inc.,* 481 F.2d 844 (9th Cir. 1973); *Nader v. Allegheny Airlines, Inc.,* 512 F.2d 527 (D.C.Cir.1975).

We think, however, that the disposition of this case on another jurisdictional ground makes it unnecessary to decide this question.

■ We conclude that the alleged violation here was not a violation of § 401(a), 419 U.S.C. § 1371(a), requiring a "certificate of public convenience and necessity." There was thus nothing to call into play that part of § 1007(a) of the Act, 49 U.S.C. § 1487(a) which authorizes a "party at interest" to sue for an injunction. Loomis was therefore without standing to assert the statutory cause of action, and the trial court erred in overruling DHL's motion to dismiss.

■ DHL filed counterclaims for damages against the complainant Loomis. None of these counterclaims has an independent federal jurisdictional basis.[2] They, therefore, cannot stand following dismissal of the complaint. *See Pioche Mines Consol., Inc. et al. v. Fidelity-Philadelphia Trust Co., et al.,* 206 F.2d 336 (9th Cir. 1953) and *Haberman v. Equitable Life Assurance Society of United States,* 224 F.2d 401, 409 (5th Cir. 1955).

The judgment for injunction is reversed. The case is remanded to the trial court for further proceedings consistent with this opinion.

---

2. All but one alleges a state claim. No diversity jurisdiction was, or could be, alleged. The one possible federal claim is vaguely based on the right of DHL as a "party at interest" to sue for violation of the same C.A.B. regulation. Our disposition of this contention as to the Loomis suit must work equally against DHL.