**PRESCRIPTION PLAN SERVICE CORP., Plaintiff-Appellant,**

v.

**Albert FRANCO, Individually and as Administrator et al., Defendants-Appellees.**

No. 429, Docket 76–7281.

United States Court of Appeals, Second Circuit.

Argued Dec. 8, 1976.

Decided April 4, 1977.

---

19. Brief of appellants NASCOD, et al. at 10.

Milton Horowitz, New York City, for plaintiff-appellant.

Edward M. Katz, New York City (Sidney H. Kalban, Phillips & Capiello, New York City, of counsel), for defendants-appellees Wall, Barisic, Miller, Martin, Bocker and Rich.

Steven S. Miller, New York City (Proskauer, Rose, Goetz & Mendelsohn, New York City, of counsel), for defendants-appellees Franco, Hickey, Riley, Marcus, Ristine, Denys and Gundling.

Before MEDINA, OAKES and GURFEIN, Circuit Judges.

OAKES, Circuit Judge:

This appeal is from a judgment of the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge,* dismissing the action for want of either federal question or diversity jurisdiction. We affirm dismissal of the federal question claim but reverse and remand on the diversity issue with directions to grant leave to amend the complaint.

Appellant, a New York corporation, pursuant to contract administered and serviced a pharmaceutical benefit program for the National Maritime Union's Pension and Welfare Plan (the Plan). The Plan, established in 1950 under Section 302(c) of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 186(c), has its place of business in New York City and is governed by the laws of New York. It is administered by twelve trustees, six representing the Union and six representing employers of Union members. The Plan has a full-time Administrator, who was named as a defendant here along with the trustees.

Following the Plan's notice to appellant that its contract would be terminated (pursuant to a termination clause), appellant filed suit, alleging that it was fraudulently induced to enter into contracts with the Plan and to believe that it could continue contractual relations despite the express termination provisions; that the size and activity of the Plan were misrepresented; that there was a fraudulent scheme by the defendants to divert funds from the Plan to the Union's use and to ensure that the program appellant administered would not operate successfully; and that the defendants breached the contract. Although the administrator and the trustees were sued both individually and in their official capacities, service of process was made upon a lawyer authorized only to accept service for them in their official capacities. Federal question jurisdiction was alleged under 28 U.S.C. § 1331, with appellant claiming that the matter in controversy arose under Section 302(e) of the LMRA, 29 U.S.C. § 186(e), and the Welfare and Pension Plan Disclosure Act of 1958, Pub.L.No.85–836, 72 Stat. 997 (repealed in 1975 and currently incorporated by the Employee Retirement Income Security Act of 1974, Pub.L.No.93–406, 88 Stat. 829, into scattered sections of 29 U.S.C. (Supp. V 1975)). Diversity jurisdiction was also alleged, pursuant to 28 U.S.C. § 1332.

### Federal Question Jurisdiction

■ Appellant concedes that it cannot bring a direct statutory action under either of the acts cited in its complaint. It invokes federal question jurisdiction by urging us to create a "federal common law tort." Despite our statement to the contrary over twenty years ago, *Fitzgerald v. Pan American World Airways, Inc.,* 229 F.2d 499, 502 (2d Cir. 1956), it is now clear that, in appropriate cases, the federal courts may recognize or create common law torts, *see, e. g., Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971); *Ivy Broadcasting Co. v. American Telephone & Telegraph Co.,* 391 F.2d 486, 490–92 (2d Cir. 1968), and that "§ 1331 jurisdiction will support claims

founded upon federal common law . .," *Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972), *citing Ivy Broadcasting Co. v. American Telephone & Telegraph Co., supra,* 391 F.2d at 492. As we held in *Ivy Broadcasting,* however, federal jurisdiction may not be invoked merely on the strength of "some reference to federal law" in a case:

> [T]hat federal law furnishes a necessary ingredient of a claim is insufficient as a basis for federal jurisdiction, unless the claim presents an issue requiring construction of an Act of Congress or unless a distinctive policy of an Act of Congress requires that federal principles control the disposition of the claim.

391 F.2d at 493. Appellant has failed to meet this standard and has thus failed to show that its claim is one of those "few and restricted" instances in which federal common law should be developed, *Wheeldin v. Wheeler,* 373 U.S. 647, 651, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963).

■ In a case with facts more sympathetic to a federal common law claim than those in the instant case—where the plaintiff, as a union member suing for denial of a pension, was at least an intended beneficiary of LMRA § 302(c)'s provisions—this court recently noted that such a beneficiary could not obtain federal jurisdiction under § 302(e) for a claim of breach of fiduciary duty. The court also expressed "considerable doubt" about creating federal common law from § 302's jurisdictional grant. *Lugo v. Employees Retirement Fund,* 529 F.2d 251, 255 (2d Cir.), *cert. denied,* 429 U.S. 826, 97 S.Ct. 81, 50 L.Ed.2d 88 (1976). It follows a fortiori that there is no federal question jurisdiction over appellant's suit.

Appellant's reliance on *Textile Workers Union v. Lincoln Mills,* 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957), is misplaced. *Lincoln Mills* did hold that a federal grant of jurisdiction could be the basis for implying federal substantive remedies, but the Supreme Court there was deciding a choice-of-law question—whether to apply state or federal law to suits for violation of labor contracts—in a context in which jurisdic-

tion in the federal courts was clear under LMRA § 301(a), 29 U.S.C. § 185(a). Here, by contrast, appellant's claim does not fall within the jurisdictional terms of the statutes on which it relies. The *Lincoln Mills* holding, moreover, rested on a careful examination of congressional intent to provide substantive remedies under LMRA § 301; no similar intent is even suggested by appellant here. While the *Lincoln Mills* Court believed § 301 was intended to be read broadly, 353 U.S. at 456, 77 S.Ct. 923, the principal statute at issue here, § 302, has consistently been read narrowly by this court, *Lugo v. Employees Retirement Fund*, supra, 529 F.2d at 255; *Cuff v. Gleason*, 515 F.2d 127 (2d Cir. 1975) (per curiam). The district court correctly held that it lacked federal question jurisdiction over appellant's suit.

### Diversity Jurisdiction

The district court also held that it lacked diversity jurisdiction, on the ground that complete diversity of citizenship did not exist. Appellant is a New York corporation, and three of the defendants, the administrator and two of the trustees, are apparently citizens of New York. Upon appel-

lant's motion to drop these three as defendants, the court held that the two trustees were indispensable parties; all conceded that the administrator was not indispensable.[1]

■ In reaching the conclusion that the two New York trustees were indispensable, the district court failed to consider the teachings of *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), the leading case interpreting the criteria for determining indispensable parties, criteria enumerated in Fed.R.Civ.P. 19(b).[2] *See also Kamhi v. Cohen*, 512 F.2d 1051 (2d Cir. 1975). The *Provident Tradesmens* case requires in general that a "flexible" approach be taken to issues relating to indispensable parties, *Clarkson Co. v. Shaheen*, 544 F.2d 624, 628 (2d Cir. 1976); a mechanical determination of who is an indispensable party is clearly inappropriate in light of Rule 19(b)'s reference to "equity and good conscience." *See also* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1610, at 97 (1972) (suggesting that there should be very few cases terminated for lack of complete diversity based on presence of nondiverse indispensable party).

---

1. While the Plan itself is also located in New York, the parties are agreed that it is the citizenship of the trustees, not the location of the Plan, that governs for diversity purposes. *See Clarkson Co. v. Shaheen*, 544 F.2d 624, 628 (2d Cir. 1976).

2. Fed.R.Civ.P. 19 provides in part:

(a) *Persons to Be Joined if Feasible.* A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been so joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defend-

ant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and his joinder would render the venue of the action improper, he shall be dismissed from the action.

(b) *Determination by Court Whenever Joinder Not Feasible.* If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

■ In the *Provident Tradesmens* case, Mr. Justice Harlan for the Court discussed the four "factors" that Rule 19(b) requires a court to consider.[3] First, the court is to weigh the interest of the plaintiff in having a forum, with the strength of this interest dependent upon "whether a satisfactory alternative forum exists." 390 U.S. at 109, 88 S.Ct. at 738. Second, the defendant's interest in avoiding multiple litigation, inconsistent relief and sole responsibility for a liability jointly shared must be considered. *Id.* at 110, 88 S.Ct. at 738. Third, there is the interest of any outsider "whom it would have been desirable to join," as to which the court must evaluate whether the outsider's ability to protect his interest will be impaired or impeded by a judgment in his absence. *Id.* Finally, "the interest of the courts and the public in complete, consistent, and efficient settlement of controversies" must be assessed. *Id.* at 111, 88 S.Ct. at 739. Weighing these interests in this case, we do not think that the two New York trustees should be considered indispensable parties.

Appellant has no satisfactory alternative forum outside of New York, since the contract in issue was made in New York and declares New York law to govern it, the principal business dealings between appellant and the Plan occurred in New York, and both appellant and the Plan are organized under New York law. While appellees assert that appellant has an available forum in New York state court, they present no evidence that appellant could bring "the *same* action, against the *same* parties plus [the nondiverse ones], in a state court."

*Provident Tradesmens Bank & Trust Co. v. Patterson, supra,* 390 U.S. at 112, 88 S.Ct. at 739 (emphasis added). Since the federal courts should have diversity jurisdiction here if the nondiverse parties are dropped, it seems inappropriate to dismiss the action simply because there exists a state forum, whose adequacy we cannot judge on this record.

■ With regard to the second and third factors, we do not believe there is a serious possibility of prejudice either to the trustees who would remain in the case or to the two who would be dropped. The interests of the two groups are identical, counsel for those remaining in the case will be no less vigorous in their advocacy because they represent two fewer persons, and any judgment for the appellant would almost certainly be satisfied out of the Plan's, not the individuals', assets.[4] *See Isdaner v. Beyer,* 53 F.R.D. 4, 5–6 (E.D.Pa.1971) (Pennsylvania plaintiffs allowed to sue all partners of multistate accounting firm except those who were citizens of Pennsylvania). *See also Smith v. Mandel,* 66 F.R.D. 405, 411 (D.S.C.1975) (partnership in which named defendant was partner was not indispensable party, since neither partner nor partnership would be prejudiced by latter's absence, and partner's defense of own interests would also serve partnership's interest); *Gulf Insurance Co. v. Lane,* 53 F.R.D. 107, 112 (W.D.Okl.1971) (coadministration of estate not indispensable defendant, since other administrator had competent counsel and identical interests, and judgment could be shaped to protect absent party).[5]

---

**3.** The Supreme Court in *Provident Tradesmens* considered the Rule 19(b) factors in a different order from that appearing in the Rule "for convenience." *Provident Tradesmens Bank & Trust Co. v. Patterson,* 390 U.S. 102, 109 n. 2, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968). We follow the Supreme Court's order here.

**4.** Any conceivable concern about some remote form of prejudice is further alleviated by the possibility of impleader under Fed.R.Civ.P. 14(a), *see* 7 C. Wright & A. Miller, *Federal Practice and Procedure* § 1608, at 74–75 (1972), and of intervention as of right under Fed.R. Civ.P. 24(a)(2), *see* 7 C. Wright & A. Miller, *supra,* § 1610, at 100; Shapiro, *Some Thoughts*

*on Intervention Before Courts, Agencies, and Arbitrators,* 81 Harv.L.Rev. 721, 757 (1968).

**5.** We do not suggest, however, that when there are a large number of representative defendants, as in a New York law partnership, for example, the fact that a single partner is a resident of New Jersey would suffice to establish federal diversity jurisdiction in a case brought by a New York plaintiff. We emphasize, as Mr. Justice Harlan did in the *Provident Tradesmens* case, that "the decision to dismiss (*i. e.,* the decision whether the person missing is 'indispensable') must be based on factors varying with the different cases, some such factors being substantive, some procedural,

With regard to the fourth of the Rule 19(b) factors, there is no danger here of "rendering hollow or incomplete relief because of the inability to find persons who could not be joined." 7 C. Wright & A. Miller, *supra,* § 1608, at 77. The district court's decision on the merits should conclusively establish whether the Plan and its trustees did any of the acts attributed to them by appellant and whether appellant has been damaged thereby. We believe that "the public stake in settling disputes by wholes," *Provident Tradesmens Bank & Trust Co. v. Patterson, supra,* 390 U.S. at 111, 88 S.Ct. at 739, will be best served by permitting this litigation to proceed. In order for that to occur, appellant must be allowed to amend its complaint to drop the nondiverse parties. In accordance with the mandate of Fed.R.Civ.P. 15(a), that leave to amend should "be freely given when justice so requires," we instruct the district court to grant the appropriate leave. *See Kamhi v. Cohen, supra,* 512 F.2d at 1056.[6]

In view of our holding that appellant should be allowed to eliminate from its complaint the New York trustees and thus obtain diversity jurisdiction, we need not reach the question whether, if appellant dropped its contract cause of action and its suit against the trustees as representatives of the Plan, it would be entitled to sue the trustees only in their individual capacities on a fraud or other tort cause of action, *see Restatement (Second) of Trusts* § 264 (1959), as to which the New York trustees, as joint and several obligors, would presumably not be indispensable parties, *see Jones Knitting Corp. v. A. M. Pullen & Co.,* 50 F.R.D. 311, 315 (S.D.N.Y.1970). Hence we need not reach the related question whether individual service could be obtained on the out-of-state ‹defendants under the New York longarm statute. *See Lehigh Valley Industries, Inc. v. Birenbaum,* 527 F.2d 87, 92–94 (2d Cir. 1975). We of course express no opinion on the question whether the complaint states a valid claim for relief.

Affirmed in part, reversed in part, and remanded with instructions to grant leave to amend the complaint.

some compelling by themselves, and some subject to balancing against opposing interests." 390 U.S. at 118–19, 88 S.Ct. at 743.

**6.** Appellant's complaint is also deficient in its pleading of other aspects of diversity jurisdiction, but there has been no indication that these deficiencies cannot be cured by amendment. The complaint in the record here does not mention, as is required, the state of the plaintiff corporation's principal place of business (which is apparently New York), and, as

to the defendants, all of whom are natural persons, it alleges only that they are not *residents* of New York, when it should affirmatively allege the specific states of which they are *citizens.* 5 C. Wright & A. Miller, *supra,* § 1208, at 84–87 (1969). We trust that on remand the district court will make certain any deficiency has been corrected. *Geller v. New England Industries, Inc.,* 535 F.2d 1381, 1382 n. 1 (2d Cir. 1976).