Ruth Elizabeth McCormick TANKERS-
LEY, Harold F. Grumhaus, W. D. Max-
well, Frederick A. Nichols, J. Howard
Wood, F. M. Flynn, W. H. James, and
James J. Patterson, as Trustees, Plain-
tiffs,

v.

Joseph M. P. ALBRIGHT and Josephine
P. Albright, Defendants.

No. 73 C 883.

United States District Court,
N. D. Illinois, E. D.

Nov. 8, 1978.

Don H. Reuben, Reuben & Proctor, Chicago, Ill., for plaintiffs.

Max Wildman, David L. Schiavone, Thomas H. Snyder, Wildman, Harrold, Allen & Dixon, Chicago, Ill., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

Plaintiffs, Trustees of the McCormick-Patterson voting trust, originally brought this action seeking a declaratory judgment that they were empowered to vote trust shares of corporate stock in favor of certain proposed amendments to the certificate of incorporation and bylaws of the Tribune Company. Because the facts of this case have been adequately stated in Judge Bernard Decker's related memorandum opinions, 374 F.Supp. 538 (N.D.Ill., 1974) and 374 F.Supp. 551 (N.D.Ill., 1974) and summarized by the Seventh Circuit, 514 F.2d 956 (7th Cir., 1975), they need not be restated here. However, following the Seventh Circuit's decision, the voting trust expired by its own terms on April 1, 1975, at which time all of the stock of the Tribune Company held by the Trust was distributed to the Trust beneficiaries. On May 8, 1975, the shareholders reapproved, readopted, ratified and confirmed the controversial amendments.

Before the Court at this time are motions by the Trustees counterdefendants to dismiss the First, Second and Third Counterclaims.

Counterdefendants move to dismiss the First and Second Counterclaims on the grounds that the counteraction is derivative, not personal, in nature, and since the counterplaintiffs have not complied with the requirements of Rule 23.1 Fed.R.Civ.P., Counts I and II of the counteraction must be dismissed. In response, counterplaintiffs argue that the Seventh Circuit disposed of this issue, 514 F.2d 956 (1975) and further that as beneficiaries of the voting trust they have a personal cause of action against the trustees.

Preliminarily, counterplaintiffs' reliance on the Seventh Circuit's opinion is misplaced. Before the Court, on appeal, was the question of the propriety of summary relief. In reversing the District Court, the Seventh Circuit addressed itself to the narrow issues of whether the counterclaim adequately stated a claim for relief with what

the District Court erroneously believed was the required particularity and whether the record reflected the existence of a genuine issue of material fact. Whether Counts I and II of the counterclaim adequately pled an individual cause of action rather than a derivative action was not before the Court of Appeals.

The distinction between a personal and a derivative action is not merely procedural. Rather, the distinction goes to the very substance of the claim and, as in this case, can only be determined by a close reading of the complaint. The question, in this case, is complicated by the fact that counterdefendants are both Trustees and Directors. The conduct for which they are being challenged therefore, must be viewed from the perspective of the counterdefendants in their capacity as Directors and, simultaneously, in their capacity as Trustees of the McCormick-Patterson Voting Trust.

■ Generally, an action is derivative when the wrong sought to be redressed is primarily against the corporation, the whole body of stock or corporate property. On the other hand, where it appears that the injury is directly suffered by an individual shareholder or relates directly to an individual's stock ownership, the action is personal. See generally, 13 Fletcher Cycl. Corp. §§ 5911–5930 (Perm.Ed.)

■ It is settled law that an action by beneficial owners of voting trust certificates against the Trustee is personal in nature. *Brown v. McLanahan*, 148 F.2d 703 (4th Cir., 1945); *Lurie v. Rupe*, 51 Ill.App.2d 164, 201 N.E.2d 158 (1st Dist., 1964). With the exceptions of paragraph 2(b), (d), (e) and (f) (realleged in paragraph 7 of the Second Counterclaim), the first and second counterclaims challenge the defendants acting solely in their capacity as Trustees. The counterplaintiffs' failure to comply with Rule 23.1 is therefore irrelevant.

Paragraph 2(b), (d), (e) and (f), however, challenge conduct by counterdefendants acting as Directors. Specifically, counterplaintiffs allege that: (1) as "controlling directors" of the Company counterdefendants have elected themselves as executive officers of the Company and received excess compensation (par.2(b)); (2) counterdefendants have failed to declare a stock dividend (par. 2(d)); (3) by not registering the stock pursuant to the Securities Exchange Act of 1934 counterdefendants have failed to create a public market in the stock (par 2(e)); (4) counterdefendants have failed to comply with the proxy regulations under the Securities Act (par. 2(e)); and (5) counterdefendants have conducted certain business operations at a loss thus reducing the overall earnings of the Company. (par. 2(f)).

■ Unquestionably, the fact that the challenged conduct was that of counterdefendants as directors is insufficient to characterize this action as derivative or personal. The often subtle distinction between derivative and personal actions can only be determined by examining each claim in the context of this particular lawsuit.

■ Private civil actions brought to enforce federal securities law, particularly proxy requirements, may be maintained as either individual, class or derivative actions. *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1963). Paragraph 2(e) therefore seeks to redress a personal injury and may be brought without compliance with Rule 23.1. On the other hand, it is equally clear that corporate mismanagement or fraud which reduces the overall worth of the corporation does not give rise to a personal cause of action. *Empire Life Insurance Co. of America v. Valdak Corp.*, 468 F.2d 330 (5th Cir., 1972).[1] While it is true that a personal cause of action may arise where majority shareholders have profited at the expense of minority shareholders by a fraudulent sale of corpo-

---

1. An exception has developed to this general rule. Where challenged acts give rise to a dual claim—at once both personal and derivative— it is not necessary to comply with Rule 23.1.

*Empire Life Insurance Co. of America v. Valdak Corp.*, 468 F.2d 330 (5th Cir., 1972). This exception, however, is inapplicable in the present case.

rate assets, the complaint in the present action contains no such allegation. Therefore, if counterplaintiffs wish to pursue the claims set out in paragraph 2(b), (f) the procedural requirements of Rule 23.1 must be met.

Though there appears to be a split in authority, the now prevailing view is that an action to compel a declaration of dividends is personal, not derivative, because dividends are an incident of stock ownership, the shareholder is the injured party when a dividend is wrongfully withheld and finally because only the shareholder will gain by a judgment for plaintiff. *Knapp v. Bankers Securities Corporation,* 230 F.2d 717 (3rd Cir., 1956). Similarly, assuming that counterdefendants' failure to create a public market in the stock is a breach of their duty to counterplaintiffs, because it so directly affects counterplaintiffs' ownership of their stock, it also gives rise to a personal cause of action. While failure to register the company stock with the Securities Exchange Commission presumably affects all shareholders, it works an injury on ownership rights belonging to each shareholder individually.

Therefore, counterdefendants' motion to dismiss the First and Second Counterclaims is granted in part, denied in part. Defendants' motion is denied, except as it is addressed to Paragraph 2(b) and (f) (and as realleged in Paragraph 7).

Counterdefendants also move to dismiss the third counterclaim for failure to join indispensible parties. Rule 19, Fed.R.Civ.P. Count III of the counterclaim is an attack on the validity of the voting trust and seeks declaratory relief.[2] In their motion to dismiss, counterdefendants challenge the propriety of the continuation of Count III in the absence of the other beneficiaries under the trust. Counterdefendants argue that under the standards prescribed in either 19(a) or 19(b) compulsory joinder of the unnamed beneficiaries is essential to the proper adjudication of this cause. In support of this position, counterdefendants principally rely on the Seventh Circuit's opinion in this case in an earlier appeal. *Tankersley v. Albright,* 514 F.2d 956 (7th Cir., 1975).

In 1966, Rule 19 was amended to foreclose over-technical or mechanical application of the rule. In its present form, Rule 19 requires a realistic evaluation of the facts of each case to determine whether a complete and just adjudication of the cause requires the joinder of additional parties.

Preliminarily, it should be noted that Rule 19 sets out two separate standards. If joinder of additional parties deprives the court of jurisdiction, Rule 19(b), not 19(a) is the applicable provision. In the present case, joinder of the unnamed beneficiaries would deprive this court of jurisdiction by destroying diversity of citizenship. (Counterdefendants' Memorandum in Support of Motion to Dismiss, p. 9) Accordingly Rule 19(b) controls the present controversy.

The relevant inquiry pursuant to Rule 19(b) is whether in "equity and good conscience the action shall proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable."

The leading case in this area is *Provident Bank v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1967). In that case, the Supreme Court emphasized that when applying Rule 19(b) a pragmatic consideration of the effects of the alternatives of proceeding or dismissing the action must be made. The determination of whether to dismiss or proceed "must be based on factors varying with the different cases, some such factors being substantive, some procedural, some compelling by themselves, and some subject to balancing against opposing interests." 390 U.S. at 119, 88 S.Ct. at 743. Evaluation of the relevant factors, the Court held, must be made with an eye toward protecting four specific interests: (1)

---

**2.** Because the Trust has terminated by its own terms, counterplaintiffs' prayer for dissolution of the trust is now moot.

the interest of the plaintiff in having a forum;[3] (2) defendant's interest in avoiding multiple litigation and inconsistent results; (3) a non-party's ability to protect his/her interest and (4) the interest of the public and the court in complete, consistent and efficient settlement of the controversy. *Prescription Plan Service Corp. v. Franco,* 552 F.2d 493 (2nd Cir., 1977).

In *Tankersley v. Albright,* 514 F.2d 956 (7th Cir., 1975), an earlier appeal in this case, the Seventh Circuit discussed at some length these very considerations. However, as the court specifically stated, evaluation of the factors in that instance was limited to an application of Rule 19(a). The Seventh Circuit unequivocally left open the question of joinder as it might arise under Rule 19(b). 514 F.2d at 967 n.24. Therefore, while we take guidance from that opinion, it is not dispositive of the controversy presently before this Court.

 Counterplaintiffs in this action surely have an interest in having a forum. The strength of this interest in the overall determination of the joinder issue, however, is dependent upon whether a satisfactory alternative forum exists. *Prescription Plan Service Corp. v. Franco,* 552 F.2d 493 (2nd Cir., 1977). It appears at this juncture that if the third counterclaim was dismissed, counterplaintiffs would have an available forum in the Illinois state court. As the Seventh Circuit pointed out, the rule which has evolved out of *Mullane v. Central Hanover Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) would in all likelihood provide the Illinois court with jurisdiction over the controversy. Further, counterplaintiffs would not be foreclosed by the statute of limitations from pursuing their claim in state court. Under Illinois law the five year statute of limitations does not begin to run against an express trust until the trust is either repudiated or trust relationship between the parties terminates. Ch. 83 § 16 Ill.Rev.Stat. (1961); *Becker v. Billings,* 304 Ill. 190, 136 N.E. 581 (1922); *Barnes v. Barnes,* 282 Ill. 593, 118 N.E. 1004 (1918); Cf. *Piff v. Berresheim,* 405 Ill. 617, 92 N.E.2d 113 (1950).

The counterdefendants' interest in avoiding multiple litigation and/or inconsistent results and the non-party beneficiaries' interest in protecting their rights in the trust are really two sides of the same coin. If the absent beneficiaries are not represented in this lawsuit, they cannot be bound by the judgment and may, at some time in the future, bring additional actions against counterdefendants. There is no question of the seriousness of this eventuality. However, that does not mean that this court may never adjudicate a controversy where interested persons are not parties to the lawsuit.

In the present case, the record is silent as to the precise nature of the absent beneficiaries interest in the lawsuit. However, it is conceivable that at least some of the beneficiaries would argue to uphold the validity of the trust. For those beneficiaries, the trustees may adequately represent their interests. As to those beneficiaries who, like counterplaintiffs, would challenge the validity of the trust, several factors tend to ameliorate their potential difficulty in protecting their interests. As of this date, the absent beneficiaries, as well as all shareholders, have been on actual notice of this action for over three (3) years. There has been ample opportunity for intervention of which, apparently, none of the absent beneficiaries have taken advantage. Further, counterplaintiffs, who have pursued this action for nearly five (5) years, are represented by competent counsel who undoubtedly will continue to vigorously represent their clients to the ultimate benefit of all concerned including those absent beneficiaries whose interest, in all likelihood are identical to counterplaintiffs.

Finally, while it is surely preferable to have all interested parties before the Court, it is not absolutely essential that all beneficiaries of a voting trust be named parties in an action challenging the trust's validity. The general thrust of Rule 19, as amended, calls for an effort to retain jurisdiction. 7

---

**3.** In the present case it is the interest of the defendant, counterplaintiff, in having a forum.

Wright and Miller, *Federal Practice and Procedure* § 1618. However, even prior to the 1966 Amendment, it was held that joinder of all beneficiaries may not be required in an action seeking to dissolve or terminate a trust. *Atwood v. National Bank of Lima*, 115 F.2d 861 (6th Cir., 1940); 7 Wright and Miller, *Federal Practice and Procedure* § 1618 at 186. Though interested in the outcome of this lawsuit, the absent beneficiaries have no interest in having the affairs of the voting trust conducted unlawfully and their absence should not foreclose final resolution of this issue. *Wesson v. Crain*, 165 F.2d 6, 9 (8th Cir., 1958).

Similarly, while avoidance of multiple litigation and conflicting results ordinarily weighs heavily in the evaluation of Rule 19(b) compulsory joinder, circumstances in the present case strike a different balance. This counter action was originally filed in 1973. It was not until 1975, after the Seventh Circuit voiced its concern over the joinder problem that counterdefendants filed this motion. We decline to comment on counterplaintiffs' allegation that this motion is merely a ruse to avoid counterplaintiffs' request for certain discovery and is not made in good faith. We do note, however, that counterdefendants lack of diligence in pursuing this matter indicates something less than a compelling desire to avoid multiple lawsuits. Indeed counterdefendants initiated this action by seeking declaratory relief against the two named beneficiaries apparently disregarding the remaining trust beneficiaries.

Finally, we must consider the broader interest of the public and the court in obtaining an efficient and consistent resolution of this controversy. It is perhaps at this point in the analysis that pragmatic considerations are the most significant. The present controversy has been pending for five (5) years. Considerable time, effort and money has been spent by both parties. This we believe weighs very heavily against dismissing the third counterclaim. Cf. *Rippey v. Denver United States National Bank*, 42 F.R.D. 316 (D.C.Colo., 1967). Further, we do not believe a ruling in the third counterclaim would be an exercise in judicial futility. This Court is capable of conclusively establishing the validity of the voting trust, the legality of the Trustees activities, whether the beneficiaries were injured and framing the appropriate relief. Cf. *Prescription Plan Service Corp. v. Franco*, 552 F.2d 493 (2nd Cir., 1977).

On balance, therefore, we believe that "in equity and good conscience" the third counterclaim should proceed. Accordingly, counterdefendants' motion to dismiss for failure to join indispensable parties is denied.