**ENVIROTECH CORPORATION and Chemico Air Pollution Control Corp., Plaintiffs-Appellees,**

v.

**BETHLEHEM STEEL CORPORATION, Defendant-Appellant,**

and

**Envirotech Corporation, Defendant on Counterclaim-Appellee.**

**No. 84, Docket 83–7331.**

United States Court of Appeals, Second Circuit.

Argued Oct. 27, 1983.

Decided Feb. 17, 1984.

Richard J. McCarthy, New York City (Gaston, Snow, Beekman & Bogue, New York City, Theodore E. Dinsmoor, Stephen Y. Chow, Richard E. Nathan, Gaston, Snow & Ely Bartlett, Boston, Mass., of counsel), for plaintiffs-appellees.

James H. Reidy, New York City (Hynes, Diamond & Reidy, P.C., New York City, Curtis H. Barnette, Howard A. Feldman, Bethlehem, Pa., of counsel), for defendant-appellant.

Before LUMBARD, OAKES and KEARSE, Circuit Judges.

LUMBARD, Circuit Judge:

Plaintiff-appellee Chemico Air Pollution Control Corporation (CAPC Corporation) brought a diversity suit in the Southern District, Robert W. Sweet, *Judge*, against Bethlehem Steel Corporation, a Delaware corporation, for breach of contract. Bethlehem counterclaimed against CAPC Corporation and its parent company, Envirotech Corporation, also a Delaware Corporation, for breach of contract arising out of the same transaction. When it was subsequently revealed that Envirotech had been the real party in interest in the original claim against Bethlehem, the district court dismissed that claim for lack of diversity. To protect the counterclaim from dismissal as well, Bethlehem offered to drop Envirotech as a counterclaim defendant, and proceed against CAPC Corporation alone. Judge Sweet refused that request, on the ground that Envirotech was an indispensible party to the counterclaim under Fed.R. Civ.P. 19(b), and dismissed the counterclaim as well for lack of subject matter jurisdiction. Bethlehem appeals from the latter determination.

We affirm.

## I.

This dispute concerns seven contracts executed from 1977 to 1979 between Bethlehem and various corporate entities, all controlled by Envirotech. Each of the contracts called for Bethlehem to purchase "quench cars," a pollution control device used in the production of metallurgic coke.

As the jurisdictional difficulties in the case arise from the complicated corporate history of Envirotech and its relevant affiliated entities, we start with an outline of that history. In November, 1975, Envirotech purchased Chemico Air Pollution Control *Company* (Chemico Company) from an outside corporation, to acquire its quench car technology. Chemico Company was made a division of Envirotech. In February and March, 1977, Chemico Company entered into four contracts to sell quench cars to Bethlehem.

In late February, 1977, Envirotech purchased all of the stock of the Fowler Engineering Corporation, apparently to obtain the firm's New York engineering license,

and changed Fowler's name to Chemico Air Pollution Control *Corporation* (CAPC Corporation), a wholly owned independent subsidiary of Envirotech. In April, 1977, Envirotech transferred to CAPC Corporation nearly all of the assets and property of Chemico Company, expressly including the four contracts executed earlier that year between Bethlehem and Chemico Company/Envirotech. Bethlehem consented to the assignment of the contracts.[1]

In October, 1978, for tax and accounting reasons, Envirotech and CAPC Corporation entered into a partnership, in which Envirotech held a 99% interest and CAPC Corporation a 1% interest. CAPC Corporation transferred to the Partnership all its assets and liabilities, including the four Bethlehem contracts.

From March to June, 1979, Bethlehem entered into three more contracts for the purchase of quench cars. Despite the April, 1977, transfer of the four earlier Bethlehem contracts from Chemico Company to CAPC Corporation, these three were again executed in the name of Chemico Company.

In November, 1980, CAPC Corporation, a New York corporation, filed a diversity suit in the Southern District against Bethlehem, a Delaware corporation, for $6 million for breach of contract arising from all seven Bethlehem agreements. In December, 1980, for reasons unrelated to this suit, CAPC Corporation transferred its 1% interest in the Partnership to Envirotech as a dividend, and the Partnership was dissolved. In January, 1981, Bethlehem counterclaimed for $7 million in damages for breach of contract against CAPC Corporation *and* Envirotech, thus joining Envirotech as a third-party defendant. Presumably in contemplation of possible dismissal

of its counterclaim against Envirotech, a Delaware corporation, for lack of diversity, Bethlehem simultaneously filed suit in a New York state court against CAPC Corporation and Envirotech, asserting substantially the same claims raised in the counterclaim. The New York action apparently is still pending.

In April, 1981, CAPC Corporation executed an assignment purporting to transfer all its rights and interests in this lawsuit to Envirotech, although the October, 1978, transfer of CAPC's interests to the Partnership, followed by the December, 1980, transfer of all Partnership interests to Envirotech, apparently had already effected that result.[2]

In May, 1981, Envirotech filed suit against Bethlehem in California state court, raising the same claim brought by CAPC Corporation in this suit, asserting that it (Envirotech) had become a successor in interest to that suit by virtue of the April, 1981, assignment. The California action was stayed pending disposition of this suit. On September 14, 1981, Envirotech was joined as an additional party plaintiff in this suit by stipulation of the parties, on the strength of CAPC's purported April, 1981, assignment.

The possibility that CAPC Corporation had ceased to be the party in interest long before the April, 1981, purported assignment was not raised until a pretrial conference with Judge Sweet in July, 1982, by which time discovery was substantially complete. Following the submission of memoranda and oral argument on the question of jurisdiction, Judge Sweet issued an opinion on December 16, 1982, dismissing both claim and counterclaim for lack of

---

1. Despite notice to Bethlehem of this assignment, all parties continued to transact business concerning the four 1977 contracts in the names of both Chemico Company and CAPC Corporation, both denominated "divisions" of Envirotech. The only explanation offered for this variation in names is that Envirotech paid no particular attention to corporate structure in conducting its quench car business.

2. Bethlehem alleges the purported assignment was executed so that Envirotech could acknowledge its interest in the claim in order to sue in its own name in state court, but at the same time make it appear that CAPC Corporation had still been the party in interest in November, 1980, at the time the original complaint was filed, in order to protect CAPC Corporation's standing to sue in federal court.

subject matter jurisdiction, due to the absence of complete diversity.

As to CAPC Corporation's claim against Bethlehem, Judge Sweet concluded that subject matter jurisdiction had never existed, since the real party in interest at the time the complaint was filed in November, 1980, was the Partnership formed in 1978 between CAPC Corporation and Envirotech, which owned the contract rights in question.[3] Since under New York law, a suit on a debt due to a partnership must be brought on behalf of the partnership, *D'Ippolito v. Cities Services Co.*, 374 F.2d 643, 647 (2d Cir.1967); *see* Fed.R.Civ.P. 17(b) (capacity to sue determined by law of state in which district court sits), and for purposes of diversity jurisdiction a partnership is a citizen of each jurisdiction of which a partner is a citizen, *Cunard Line Ltd. v. Abney*, 540 F.Supp. 657, 660 (S.D.N.Y. 1982), complete diversity was always lacking. The district court therefore dismissed CAPC Corporation's and Envirotech's claim against Bethlehem for lack of subject matter jurisdiction. The parties do not appeal from that dismissal.

Once Judge Sweet dismissed the original claim for lack of subject matter jurisdiction, he had no power to retain the counterclaim under ancillary jurisdiction. *See DHL Corp. v. Loomis Courier Service, Inc.*, 522 F.2d 982, 985 (9th Cir.1975); *see generally* 6C. Wright & A. Miller, *Fed. Pract. & Proc.* § 1414 at 79–80 n. 86 (1971 & 1983 Supp.). To create an independent basis for jurisdiction (i.e., complete diversity), Bethlehem therefore moved to drop Envirotech as a counterclaim defendant, and proceed only against CAPC Corporation.

Judge Sweet rejected that request, on the ground that Envirotech was an indispensible party to the counterclaim, within the meaning of Fed.R.Civ.P. 19(b). In reaching that determination, he weighed the four factors that are listed in Rule 19(b) and routinely applied by the courts, *see, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 109–111, 88 S.Ct. 733, 737–738, 19 L.Ed.2d 936 (1968); *Prescription Plan Serv. Corp. v. Franco*, 552 F.2d 493, 497 (2d Cir.1977) (citing *Provident Tradesmens*): (1) the plaintiff's (here, counterclaim plaintiff's) interest in having a federal forum; (2) the defendant's (here counterclaim defendant's) interest in avoiding multiple litigation, inconsistent relief, and sole responsibility for liability jointly shared, if codefendant is dismissed from the suit; (3) the absent codefendant's inability to protect its interests in any judgment rendered; and (4) the public interest in complete, consistent and efficient settlement of controversies.

The first factor, Judge Sweet concluded, lent no weight to Bethlehem's argument in favor of the dispensibility of Envirotech, since the existence of parallel suits commenced in the New York and California state courts provided adequate alternative fora for Bethlehem's counterclaim. The second and third factors, he concluded, lent little if any weight to the argument on the other side (i.e., in favor of indispensibility), since the identity of interests between Envirotech and CAPC Corporation obviated any serious possibility of prejudice to either the absent or the present parties, were Envirotech dropped from the suit. *See Prescription Plan Serv. Corp. v. Franco, supra*, 552 F.2d at 497.

---

**3.** This conclusion is clearly correct in regard to the four contracts executed in February and March, 1977, between Chemico Company and Bethlehem, which were subsequently assigned to CAPC Corporation in April, 1977, and then reassigned to the newly formed Partnership in October, 1978. Whether, as Judge Sweet appears to assume, it is also true of the three contracts executed in 1979 in the name of "Chemico Air Pollution Control Company, Envirotech Corporation," depends on whether Envirotech was thereby contracting on its own behalf (through its Chemico division), or on behalf of the Partnership. If the former (as would appear on the face of it), then presumably the rights were the property of Envirotech alone at the time the suit was filed in November, 1980. In either case, however, complete diversity was always lacking on the original claim.

The fourth factor, usually termed the danger of "rendering hollow or incomplete relief" in the absence of a party not joined, was paramount in the determination that Envirotech was an indispensible party. Judge Sweet concluded that a review of the tortured history of the legal relationship of Envirotech and its subsidiary, CAPC Corporation, concerning the quench car business revealed that, at the very least, the interests of the two companies were "inextricably intertwined" throughout the period in question; and, more likely, that Envirotech, not CAPC Corporation, was the real party in interest. As Judge Sweet summarized that history:

> None of the agreements was executed on behalf of CAPC Corporation. While some of the agreements were assigned to CAPC Corporation by Envirotech in April, 1977, these became the property of the Partnership in October, 1978. Three subsequent agreements were signed in 1979 on behalf of "Chemico Air Pollution Control Company, Envirotech Corporation." The rights and liabilities from these agreements apparently resided in Envirotech as an individual entity, and not as a member of the Partnership. Therefore, CAPC Corporation was never a party to these agreements. The agreements that CAPC Corporation did have an interest in were Partnership property when this action was commenced. At the time the counterclaim was asserted, however, the Partnership had been dissolved and its assets and liabilities apparently transferred to Envirotech.

Judge Sweet therefore concluded that it was "questionable whether any relief could be obtained from CAPC Corporation, since it did not have any interest in the subject matter of the counterclaim when it was asserted." He rejected Bethlehem's suggestion that a judgment in federal court against CAPC Corporation would at the very least have collateral estoppel value in future litigation against Envirotech in state court, asserting that federal courts remained courts of limited jurisdiction, and that collateral estoppel was "no substitute for litigating the issues from start to finish in state court."

On reargument of the issue of jurisdiction over the counterclaim, Bethlehem asserted that Judge Sweet had erred in not finding that CAPC Corporation was at least a co-obligor on the three 1979 agreements signed by Chemico Company, either as a dual seller or as an agent for its undisclosed principal. Citing to the general proposition that a co-obligor may be sued individually without the necessary presence of other joint obligors, *see generally* 3A *Moore's Federal Practice* ¶ 19.11 (2d ed. 1982), Bethlehem argued that Judge Sweet therefore wrongly concluded that Bethlehem could not obtain adequate relief on all seven contracts if it proceeded against CAPC Corporation alone (i.e., the analysis under the fourth factor).[4]

On March 24, 1983, Judge Sweet issued a second opinion reaffirming his ruling that Envirotech was an indispensible party to the counterclaim. 98 F.R.D. 250 (1983). Accepting *arguendo* Bethlehem's contention that CAPC Corporation was a co-obligor on the three 1979 contracts and that Bethlehem could therefore obtain adequate relief on all seven contracts from CAPC Corporation alone, Judge Sweet nonetheless found that as Envirotech was the sole obligee with respect to all seven contracts by the time the counterclaim was filed,[5] its rights would inevitably be affected by adju-

---

**4.** Bethlehem's argument assumes not only that CAPC became a co-obligor on the three 1979 contracts at the time they were executed, but also that it remained the obligor on the four 1977 contracts, despite its attempted 1978 assignment of its obligations to the newly created Partnership. The latter assumption appears correct, as that assignment—unlike the 1977 assignment from Chemico to CAPC—was made without Bethlehem's consent, and hence did not discharge CAPC Corporation from its duties under the contracts. *Restatement of Contracts 2d* § 318 (1981).

**5.** Although Bethlehem's consent was required to discharge CAPC from its contractual duties, *see* n. 4 *supra,* it was not required to assign CAPC's

dication of the issues in its absence.[6] *Cf. Bio-Analytical Services, Inc. v. Edgewater Hospital, Inc.*, 565 F.2d 450, 453 (7th Cir. 1977), *cert. denied*, 439 U.S. 820, 99 S.Ct. 84, 58 L.Ed.2d 111 (1978) (joint obligor non-obligee not an indispensible party-plaintiff); *Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003, 1012 (E.D.Pa.1975), *aff'd*, 530 F.2d 966 (3d Cir.1976) (same); *see also Acton Co. v. Bachman Foods, Inc.*, 668 F.2d 76, 82 n. 3 (1st Cir.1982) (distinguishing *Bio-Analytical* as involving "mere guarantor" who was neither a party to the contract at issue nor had any rights arising from the contract).

Bethlehem appeals from that determination, asking us to hold that Envirotech is not an indispensible party, thereby allowing Bethlehem to preserve diversity jurisdiction for its counterclaim.

## II.

The language of Rule 19(b) leaves the district court with "substantial discretion in considering which factors to weigh and how heavily to emphasize certain considerations in deciding whether the action should go forward in the absence of someone needed for a complete adjudication of the dispute." 7 Wright and Miller, *Fed.Pract. and Proc.* § 1604 at 45–46 (1972). Concluding that that latitude puts a Rule 19(b) determination more in the arena of a factual determination than a legal one, we have held appellate review to be limited to "abuse of discretion." *Rapoport v. Banco Mexicano Somex, S.A.*, 668 F.2d 667 (2d Cir.1982) (per curiam); *accord Cloverleaf Standardbred Owners v. National Bank*, 699 F.2d 1274 (D.C.Cir.1983); *Walsh v. Centeio*, 692 F.2d 1239 (9th Cir.1982).

Although Judge Sweet might well have reached a different determination in weighing the factors considered, we conclude that nothing in his decision finding Envirotech to be an indispensible party constitutes an abuse of discretion. Construing the tangled relations of Envirotech and CAPC Corporation in the light most favorable to Bethlehem, Envirotech's involvement with the contracts at issue was still considerable. It is undisputed that by the time Bethlehem filed its counterclaim in January, 1981, Envirotech was the sole obligee on all seven Bethlehem contracts. Thus, Judge Sweet could reasonably conclude that Envirotech possessed rights arising from the agreements at issue "which are 'inextricably intertwined' with issues bound to be raised in an action solely against CAPC Corporation." Furthermore, we agree with Judge Sweet's conclusion in his December 16th opinion that Envirotech was the sole obligor on the three contracts executed in 1979.[7] Although that conclu-

contractual rights. Thus, Envirotech became sole obligee on the four 1977 contracts by virtue of the 1978 assignment of rights on those contracts to the Partnership, and the 1980 reassignment of rights to Envirotech alone. As to the three contracts executed in 1979, Bethlehem appears to concede that Envirotech, through Chemico Company, was sole obligee from the start.

6. Judge Sweet thus appears to have abandoned, or at least modified, the view expressed in the December 16, 1982, opinion, that the third factor—possible prejudice to Envirotech if the counterclaim was adjudicated in its absence— did not weigh significantly in his Rule 19 determination in this case.

7. The three contracts were each addressed by Bethlehem to "Chemico Air Pollution Control Corporation/A Division of Envirotech Corpora-

tion," but signed on behalf of Chemico Company. On the basis of that evidence, Judge Sweet concluded that Envirotech (through Chemico Company) was the sole party in interest. As Envirotech's own choice of signatory should obviously control (and as Bethlehem's substitution of "Corporation" for "Company" was likely unintentional in any event), we agree.

On reargument, as noted above, Bethlehem urged that CAPC Corporation was also a party to these agreements, either as a dual seller or as an agent for its undisclosed principal, Envirotech. Judge Sweet accepted that argument without deciding it, in disposing of the case solely on the basis of Envirotech's "sole obligee" status. We are uncertain what Bethlehem intended by its agency theory, since it was CAPC Corporation, and not Envirotech, that was arguably the undisclosed party in these transactions. The only support Bethlehem offers for its "dual seller" theory is that CAPC Corporation and

sion is not necessary to our affirmance of Judge Sweet's holding, it adds weight to the argument in favor of indispensibility, as it would mean that Bethlehem would be unable to obtain relief from CAPC Corporation on any claims related to those three contracts.

In the face of Envirotech's interest in participating in any adjudication of the contract dispute, and the court's and parties' possible interests in avoiding a "hollow" judgment against defendant CAPC Corporation in Envirotech's absence, few interests weigh in on the side of non-joinder. The New York and California suits provide ready avenues for Bethlehem to pursue its counterclaim with all three parties present. In addition, since the federal suit has not yet gone to trial and the parties have agreed that discovery done in preparation for that trial may be used in any state proceedings, little is lost by dismissing the federal suit at this point. *Cf. Provident Tradesmens Bank & Trust Co. v. Patterson, supra,* 390 U.S. at 112, 88 S.Ct. at 739.

In view of all of the foregoing, we agree with Judge Sweet that the interests of all the parties and the courts are best served by holding that Envirotech is an indispensible party to the litigation. Facing a virtually identical set of facts in *Acton Co. v.*

*Bachman Foods, Inc., supra,* 668 F.2d at 81, the First Circuit recently reached the same result, concluding that " 'Equity and good conscience would seem to require that under circumstances such as those present here, parties should present their claims in a state court rather than attempt to manipulate jurisdiction by dropping plaintiffs with a substantial interest in the claim solely for the purpose of retaining jurisdiction in the federal court.' *Potomac Electric Power Co. v. Babcock & Wilcox Co.,* 54 F.R.D. 486, 492–93 (D.Md.1972)."

Bethlehem does not seriously contest most of Judge Sweet's conclusions as to the degree of involvement of Envirotech in the quench car contracts with Bethlehem.[8] Rather, Bethlehem's argument for finding Envirotech to be a dispensible party rests on the inequity of this court's dismissing Bethlehem's counterclaim now for lack of diversity, on the basis of information that Envirotech duplicitously withheld from the district court when it originally wished to preserve federal jurisdiction. In support of that argument, Bethlehem alleges that CAPC Corporation falsely claimed at the time it filed suit in federal court that it still owned the contract rights in question, even though it knew those rights had been transferred to the Partnership in 1978;

Envirotech earlier represented to the court that CAPC Corporation, and not Envirotech, had been the contracting party on all seven contracts. However, in light of the fact that those earlier representations now appear—as Bethlehem itself argues—to have been untrue, they hardly seem adequate grounds for rejecting Judge Sweet's original conclusion that Envirotech was the sole contracting party, and hence sole obligor, on the 1979 contracts.

**8.** Bethlehem concedes that Envirotech was the sole obligee on all seven contracts, but argues that we ought to disregard that fact for two reasons: (1) Envirotech only became the sole obligee a month and a half *after* it filed its original claim, when it dissolved the Partnership and distributed the assets to itself; and (2) Envirotech ought to be bound by its earlier representations to the court that CAPC Corporation, and not it, owned the contract rights in question at the time the counterclaim was filed.

Bethlehem's first point pertains at most to the four 1977 contracts, since it is undisputed that Envirotech was the sole obligee from the start

on three 1979 contracts; and even as to those four, Envirotech, at the time it filed suit, was a 99% owner in the sole rights the Partnership held in them. Furthermore, given that Envirotech was undisputedly the sole obligee on all seven contracts by the time Bethlehem filed its counterclaim, we are unsure what relevance its less than exclusive interest prior to that time should have in determining Envirotech's indispensibility on the counterclaim.

On Bethlehem's second point, if those earlier representations were false, as Bethlehem itself urges, they are entitled to weight, if at all, only in determining the equities of allowing Envirotech to profit from its own wrongdoing, *see infra,* and not in ascertaining the true extent of Envirotech's interest in this suit.

Bethlehem does dispute Judge Sweet's conclusion in the December 16th opinion that Envirotech was the sole obligor on the three 1979 contracts. However, as discussed in n. 7, *supra,* the only evidence offered to support its contention is, again, contrary representations by Envirotech and CAPC Corporation that Bethlehem itself claims to have been false.

that CAPC Corporation knowingly withheld, and falsely denied knowledge of, documents specifically requested in discovery that would have revealed the 1978 transfer and the subsequent 1980 retransfer of those rights to Envirotech; that Envirotech executed a false assignment of those rights to itself in April, 1981, to obscure those earlier transfers; and that Envirotech falsely alleged to the court, when it was added as party plaintiff in September, 1981, that it acquired its interest in the suit by virtue of that assignment.

Assuming, *arguendo*, that all of Bethlehem's allegations are true,[9] they fail to state a ground under the standard Rule 19(b) analysis for finding that Envirotech is not an indispensible party. Bethlehem's argument to the contrary requires this court to read the language of "equity and good conscience" contained in Rule 19(b) as prescribing the essential test for determining indispensibility, with the four specifically enumerated criteria discussed above being merely an incomplete sublist of factors to be looked at under that test. Applying the dictates of "equity and good conscience" to the facts of this case, Bethlehem argues, this court should conclude that the duplicitous conduct of CAPC Corporation and Envirotech in trying to preserve federal jurisdiction when it was in their interests to do so, justifies retaining federal jurisdiction now that Bethlehem, and not they, desires it.

Case law does not support that reading of Rule 19(b). While the "equity and good conscience" language of Rule 19(b) does appear to set out the standard to be used in measuring indispensibility, and not—as Envirotech and CAPC Corporation argue—merely place the determination within the discretion of the district court, and while courts do look at factors beyond the four enumerated in the Rule in applying that standard, the factors weighed pertain only to the interests at stake in hearing a case in federal court, and not to any broader notion of "unclean hands" implicit in Bethlehem's argument here. *See, e.g., Provident Tradesmens Bank & Trust Co. v. Patterson, supra; Bethell v. Peace*, 441 F.2d 495 (5th Cir.1971); *Bloch v. Sun Oil Corporation*, 335 F.Supp. 190 (W.D.Okl. 1971); and other cases cited at 7 Wright & Miller, *Fed.Pract. & Proc.* § 1607 n. 73 (1972 and Supp.1983).

The cases Bethlehem cites in support of its argument that Envirotech's "wilful misconduct" should be weighed in a Rule 19(b) determination are not to the contrary, since all involve Rule 37 sanctions for failure to comply with discovery orders, not jurisdictional determinations under Rule 19(b). *E.g., National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Litton Systems, Inc. v. Amer. Tel. & Tel.*, 700 F.2d 785, 826–28 (2d Cir.1983); *Cine Forty-Second Street Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062 (2d Cir. 1979). The concerns to be weighed in a decision to apply Rule 37 sanctions, including punishment and deterrence of wilful flouting of court orders, are sufficiently different from those at stake in a Rule 19(b) determination to make the analogy inapposite.

Finally, we note that a party injured by the sort of misrepresentations Bethlehem alleges here is not without remedies. Under the amended Fed.R.Civ.P. 11, it may petition the district court to order the offending attorneys or represented party to pay all reasonable costs incurred as a result of those misrepresentations.

Accordingly, we affirm the district court's determination that Envirotech was an indispensible party to Bethlehem's counterclaim, and uphold the dismissal of the

---

**9.** Counsel for Envirotech and CAPC Corporation dispute only one allegation made by Bethlehem: that the April, 1981, assignment was made for the purpose of deceiving the court and opposing parties about the date on which Envirotech became a party in interest. Instead, they argue, the reason for the assignment was to make explicit that the quench car business was excluded from the sale of CAPC Corporation to an outside corporation, consummated one week later.

counterclaim for lack of subject matter jurisdiction.

Affirmed.