Lee N. **KOEHLER**, Plaintiff–Appellant,

v.

**THE BANK OF BERMUDA (NEW YORK) LIMITED, a New York Corporation, The Bank of Bermuda Limited, a Bermuda Corporation, Reefs Beach Club Limited, a Bermuda Corporation and A. David Dodwell, a Bermuda citizen, Defendants–Appellees.**

**Docket No. 98–9624**

United States Court of Appeals, Second Circuit.

Argued: Aug. 30, 1999

Decided: April 10, 2000

**132**

Brian G. West, Towson, Maryland (Paul F. Newhouse, Towson, Maryland, of counsel), for Plaintiff–Appellant Lee N. Koehler.

Gregor F. Gregorich, New York, New York (Laurie R. Rockett, Hollyer Brady Smith Troxell Barrett Rockett Hines & Mone, LLP, New York, New York, of counsel), for Defendant–Appellee The Bank of Bermuda Limited.

J. Lawrence Blades, Salisbury, Connecticut (c/o Intrac Group, New York, New York, of counsel), for Defendants–Appellees Reefs Beach Club Limited and A. David Dodwell.

Sandra G. Behrle, New York, New York (Cooper, Brown & Behrle, P.C., New York, New York, of counsel), for Defendant–Appellee The Bank of Bermuda (New York) Limited.

Before: NEWMAN, CARDAMONE, and JACOBS, Circuit Judges.

CARDAMONE, Circuit Judge:

Plaintiff Lee N. Koehler appeals from a judgment and two orders of the United States District Court for the Southern District of New York (Keenan, J.). On February 19, 1998 the court granted defendant's, Bank of Bermuda, New York Ltd. (New York Bank), motion to dismiss plaintiff's complaint against it for failure to state a cause of action. On September 4, 1998 the district court granted remaining defendants', Bank of Bermuda, Ltd. (Bank Bermuda, Ltd.), A. David Dodwell, and The Reefs Beach Club Ltd. (The Reefs Ltd.), motion to dismiss plaintiff's federal securities cause of action for failure to state a claim, and the remaining counts for lack of subject matter jurisdiction, and dismissed the case. On November 12, 1998 it denied plaintiff leave to amend his federal securities complaint.

The issues on appeal are whether the district court correctly dismissed the claims against New York Bank and the federal securities claims for failure to state a claim; whether 28 U.S.C. § 1332 extends federal court jurisdiction to a dispute between a United States individual and a

Bermuda individual and corporations, *i.e.*, whether alienage jurisdiction is available; and whether the district court acted within its discretion in denying leave to plaintiff to amend his complaint a second time.

We affirm the district court's dismissal of the complaint and its denial of leave to amend.

## BACKGROUND

### A. *The Parties' Acquisition of and Financing for Resort Hotels*

Plaintiff Lee N. Koehler met defendant A. David Dodwell in July 1977 when Dodwell was the general manager of a Bermuda resort hotel called "The Reefs." At Dodwell's suggestion, the two began to consider forming a Bermuda pest control business. These efforts had not progressed very far when Dodwell learned in 1980 that The Reefs Ltd., the parent company of The Reefs resort, was for sale. This information turned Dodwell and Koehler's attention from pest control to resort hotels.

In 1981 Dodwell, Koehler, and Haussner's Restaurant, Inc., a Maryland corporation, acquired The Reefs Ltd. Dodwell acquired 51 percent of the equity and 60 percent of the voting rights; Koehler acquired 29 percent of the equity and 24 percent of the voting rights; and Haussner's acquired the remaining 20 percent of the equity and 16 percent of the voting rights. Although the amended complaint is vague as to the financing of the acquisition, it appears that defendant Bank Bermuda, Ltd. was a creditor of The Reefs Ltd. before its acquisition and remained one thereafter.

Eight years later, in early 1989, Koehler and Dodwell formed a Nevis, West Indies corporation called Windward Properties Ltd. (Windward) to acquire the Nisbet Plantation Inn, a resort on the island of Nevis. On May 2, 1989 the Bank of Bermuda's Luxembourg subsidiary, Bank of Bermuda (Luxembourg) S.A. (Luxembourg Bank) made loans in the aggregate amount of $5.5 million to finance the acquisition. The financing comprised three separate loans together termed the Nisbet loans. First, a $2 million mortgage on Windward's real and personal property was secured by individual personal guarantees of $1 million each from Dodwell and Koehler, and by a joint guarantee from both for $1 million. Second, a $1.75 million personal loan to Koehler (Luxembourg loan) was secured by a letter of credit from Bank Bermuda, Ltd. to Luxembourg Bank. The letter of credit was in turn secured by a pledge of all of Koehler's stock in The Reefs Ltd. Third, a $1.75 million personal loan to Dodwell was apparently secured in the same way. The amounts obtained from the personal loans were promptly reloaned to Windward.

The Nisbet loans went into default almost immediately on August 2, 1989, and by early 1991 were several payments in arrears. On March 20, 1991 upon a call by Luxembourg Bank, Bank Bermuda, Ltd. paid the letter of credit for the Luxembourg loan and transferred the loan to Bank Bermuda, Ltd. Plaintiff's complaint suggests that the call was never made, or was not made in good faith, but offers no facts supporting this assertion. On May 2, 1991 Bank Bermuda, Ltd. sent Koehler a demand note for the unpaid Luxembourg loan principal with a cover letter requesting his assent to the new loan arrangement. On May 14, 1991 Koehler executed the demand note and cover letter.

Meanwhile, on November 2, 1989, Dodwell, Koehler, and another partner named Southworth formed the Mansion Club Limited Partnership (Mansion Partnership), a Maryland limited partnership, to acquire the Mansion Club, a private dining club in Phoenix, Arizona. Initially, Koehler owned 30 percent of the partnership and Malvern Properties, Ltd. (a corporation wholly owned by Dodwell) also owned 30 percent. New York Bank loaned $4.5 million to Mansion Partnership to finance its acquisition of the Mansion Club. This loan, called the New York loan, was se-

cured by Mansion Partnership assets (including the Mansion Club), personal guarantees of Southworth, Koehler, Dodwell, and Malvern Properties in the respective amounts of $1.8 million, $1.35 million, $1.35 million, and $1.35 million, and a pledge of equity in two corporations not relevant to this action. The New York loan closed on December 22, 1989. Bank Bermuda, Ltd. employees were deeply involved in the structuring of both the Nisbet loans and the New York loan.

## B. *Financial Difficulties*

Koehler and Dodwell had several discussions regarding their financial difficulties and agreed on June 27, 1990 that any restructuring would require a pledge of their combined 80 percent equity interest in The Reefs Ltd. By early 1991 it was clear that the New York loan, like the Nisbet loans, was in trouble. On January 25, 1991 Koehler and Dodwell responded to Bank Bermuda, Ltd.'s request for a debt restructuring plan with the "Combined Equity Plan," which would include a pledge of their combined equity in The Reefs Ltd.

On April 18, 1991 Southworth filed for Chapter 11 bankruptcy on behalf of Mansion Partnership. Koehler contends this filing was "unauthorized." After the bankruptcy filing, Mansion Partnership hoped to sell its assets for $6.5 million, but an appraisal performed for New York Bank valued Mansion Partnership's assets at a more modest $4 to $4.5 million. The bank circulated this appraisal, over the partnership's objection, to prospective buyers. On October 8, 1991 New York Bank bought the Mansion Club for $3 million at the foreclosure sale, resulting in an alleged deficiency of over $2.5 million. The next day, New York Bank assigned the New York loan to Bank Bermuda, Ltd. Considerable negotiations between the principals in these resort ventures and the banks ensued.

On October 23 and 24, 1991 and again on December 16, 1991, Bank Bermuda, Ltd.'s chief executive officer expressed a preference for a refinancing arrangement consistent with Koehler and Dodwell's Combined Equity Plan. At some time between December 16, 1991 and Christmas 1991, he told Dodwell that he had " 'a good idea for you [Dodwell]' " that he would disclose after the holidays. Several weeks later, on February 14, 1992 at a meeting attended by Dodwell (but apparently not by Koehler), the bank presented a debt restructuring plan that would pay off almost all of Dodwell's obligations but leave Koehler substantially in debt, and would transfer $5 million in new preferred shares in The Reefs Ltd. to a subsidiary of the bank. The proposal did not address the Nisbet loans.

A revised version of the plan was delivered to Koehler on February 17, 1992. Koehler expressed his opposition to it and his strong preference for the Combined Equity Plan in conversations with high-level bank officers (a senior vice-president and corporate counsel) on April 3, 1992 and May 3, 1992. In both conversations, these officers stated that Bank Bermuda, Ltd. intended to proceed with the recapitalization plan substantively as presented to Dodwell on February 17, 1992. On May 7, 1992 Dodwell wrote Koehler and stated that he would no longer participate in the Combined Equity Plan.

On July 21, 1992 pursuant to the collateral provisions of the Luxembourg loan, Bank Bermuda, Ltd. demanded and received all Koehler's shares in The Reefs Ltd. over Koehler's objection. In July 1993 Koehler stopped receiving governance and corporate information about The Reefs Ltd. The transfer instructions directed that one share be left in Koehler's name so that he would remain eligible to be a director. A revised version of the bank's February proposal (Macdonald Plan) was submitted to Koehler's lawyer by letter dated September 28, 1992. On October 20, 1993 the Macdonald Plan recapitalization was executed. The bank's general counsel notified Koehler's lawyer

of the recapitalization by letter dated November 5, 1993.

### C. *Proceedings in the District Court*

Koehler filed the instant lawsuit in October 1996. The district court issued three separate orders in deciding this case. The first, filed February 19, 1998, granted New York Bank's motion to dismiss the complaint against it under Fed.R.Civ.P. 12(b)(6). The court reasoned that New York Bank could not have been Bank Bermuda, Ltd.'s co-conspirator "who knew and approved of [Bank Bermuda, Ltd.'s] goals" because the former bank's only challenged action—assigning the New York loan to the latter bank—occurred on October 9, 1991, at which time the latter bank was not alleged to have had any wrongful goals. Bank Bermuda, Ltd.'s decision to follow the Macdonald Plan rather than Koehler's preferred Combined Equity Plan was allegedly made between December 16 and 25, 1991. The district court also ruled that Koehler had not alleged that New York Bank acted as Bank Bermuda, Ltd.'s alter ego in any relevant way after October 9, 1991. Finally, the trial court dismissed Counts III (fraudulent conveyance) and V (inducing and/or aiding and abetting a breach of fiduciary duty and/or intentional interference with contractual relationship) as against New York Bank on the grounds that Koehler did not oppose that bank's motion to dismiss.

The district court decided the remaining claims in an opinion and order filed September 2, 1998. It dismissed all the state law claims for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1), reasoning that under *Matimak Trading Co. v. Khalily*, 118 F.3d 76 (2d Cir.1997), *cert. denied*, 522 U.S. 1091, 118 S.Ct. 883, 139 L.Ed.2d 871 (1998), citizens of Bermuda (a British Dependent Territory) are not citizens or subjects of a foreign state for purposes of diversity jurisdiction. Jurisdiction over the state law claims was therefore lacking.

In the same opinion, the district court dismissed the federal securities fraud claim for failure to state a claim under Fed.R.Civ.P. 12(b)(6). After reviewing Koehler's theory that the defendants had deliberately kept him in the dark about their long-range goal to acquire and liquidate his stock in The Reefs Ltd., the court identified several problems with that theory. First, the assignment of the New York loan on October 9, 1991 could not have been in furtherance of a plan allegedly formulated over two months later between December 16 and December 25, 1991. Second, there were no allegations that Dodwell and The Reefs Ltd. even knew that New York Bank was assigning the loan. Third, the court concluded that Bank Bermuda, Ltd. was properly enforcing its rights against Koehler under the loan agreements. Fourth, Koehler's lack of advance notice of the recapitalization was not material because Koehler did not identify specific legal remedies in Bermuda or New York that might have helped him and, in any case, he had no bargaining power concerning his pledged stock in The Reefs Ltd. Finally, any breach of the agreements by defendants did not rise to the level of federal securities fraud.

The district court's last opinion and order, filed December 9, 1998, denied Koehler's motion for reconsideration, holding there had been no error in denying his request to amend his complaint a second time because granting leave to amend would be futile.

We discuss the issues raised on appeal from the district court's three orders as follows: (1) securities fraud claim, (2) plaintiff's claim against New York Bank, (3) denial of leave to amend complaint, and (4) alienage jurisdiction.

### ANALYSIS

#### Standard of Review

■ Before examining the merits we comment briefly on the standard of review. We review the dismissal of an action *de*

*novo,* accepting all factual allegations in the complaint as true, and will affirm a dismissal only if it appears that plaintiff can prove no set of facts warranting relief. *See Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 51 (2d Cir.1995). A stricter standard applies to allegations of fraud—present in this complaint—requiring that they "be stated with particularity." Fed.R.Civ.P. 9(b); *see Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127 (2d Cir.1994). Such allegations must specify (1) those statements the plaintiff thinks were fraudulent, (2) the speaker, (3) where and when they were made, and (4) why plaintiff believes the statements fraudulent. *See Cosmas v. Hassett,* 886 F.2d 8, 11 (2d Cir. 1989).

### I Securities Fraud

As a threshold matter we observe that because a private right of action under § 17(a) of the Securities Act of 1933, 15 U.S.C. § 77q(a), is no longer recognized, *see Finkel v. Stratton Corp.,* 962 F.2d 169, 174–75 (2d Cir.1992), Koehler's cause of action under that statute was correctly dismissed.

▮ We turn to Koehler's federal securities claim arising under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5. In order to state a fraud claim under § 10(b), a plaintiff must allege that " 'in connection with the purchase or sale of securities, the defendant, acting with scienter, made a false material representation or omitted to disclose material information and that [the] plaintiff's reliance on the defendant's action caused [the plaintiff] injury.' " *Stevelman v. Alias Research Inc.,* 174 F.3d 79, 83 (2d Cir.1999) (quoting *Chill v. General Elec. Co.,* 101 F.3d 263, 266 (2d Cir.1996)) (alterations in *Stevelman* ). A plaintiff who had knowledge of the untruth or omission may not recover under § 10(b). *See Healey v. Chelsea Resources, Ltd.,* 947 F.2d 611, 617 (2d Cir.1991).

▮ Koehler's counsel conceded at oral argument the difficulty of identifying the elements of his securities fraud claim. Despite plaintiff's criticism of the district court decision, that court appears to have captured the essence of the claim: that Koehler should have been informed of the Macdonald Plan recapitalization in advance. As defendant's brief points out, "The criterion for interpretation most favorable to Koehler from these allegations should be to answer the questions: Why was Koehler not given advance notice of the recapitalization? Why was Koehler cut off from all financial and corporate governance information in July, 1993?"

Plaintiff refers to five acts or omissions that he believes underlie his fraud action. First, he argues that he should have been informed in advance of the impending Macdonald Plan recapitalization. Second, he avers in his brief that he was assured on July 21, 1992 that he would continue as a member of The Reefs Ltd.'s board of directors. This argument mischaracterizes the allegation in the complaint, which is that Bank Bermuda, Ltd. instructed The Reefs Ltd. to leave one share in Koehler's name so he would remain qualified to serve as a director. Bank Bermuda, Ltd. told Koehler through his attorney on September 28, 1992, that his retention of a single share of The Reefs Ltd. would keep him eligible for directorship. Third, Koehler maintains that he was misled by the continuation of the "work out" negotiations for nearly a year after October 21, 1992. Fourth, he asserts that he was improperly cut off from all financial and corporate governance information in July 1993. Fifth, he refers to New York Bank's assignment of the New York loan to Bank Bermuda, Ltd. on October 9, 1991.

All these contentions relate back to Koehler's central theory: that through fraud, the decision to implement the Macdonald Plan recapitalization was concealed until it was too late for him to stop it. Yet, an examination of other allegations in the

complaint clearly shows that Koehler had advance knowledge of the recapitalization. He was provided with the original outline of the Macdonald Plan on February 17, 1992, almost as soon as it was circulated internally and within two months of its conception in late December 1991. On April 3, 1992 and May 3, 1992, high-level Bank Bermuda, Ltd. employees told Koehler that the outlined proposal, rather than the Combined Equity Plan, would be implemented. On September 28, 1992 Bank Bermuda, Ltd.'s counsel sent the "first formal[ ] propos[al]" of the Macdonald Plan to Koehler's attorney and requested a meeting to discuss the plan. Appellant's suggestion that the defendants withheld information that would have enabled him to protect himself is belied by the fact that less than a month later, on October 21, 1992, he filed suit in Maryland against Dodwell to obtain specific enforcement of the Combined Equity Plan.

Koehler's third allegation—that the "work out" negotiations were deceptive—adds nothing to the first, because he fails to specify any misleading statements that were made during the negotiations, or any facts suggesting that the negotiations were not conducted in good faith. His fourth assertion—that he was cut off from information about The Reefs Ltd.—actually undermines his position. Being cut off should have alerted him to the fact that he was not considered part of The Reefs Ltd.'s corporate governance structure. Koehler's fifth averment, the assignment of the New York loan, fails because his complaint cannot support an inference that it was misleading or false. The complaint specifically states that the Macdonald Plan was first conceived *after* the assignment. Koehler's wholly unsupported speculation—advanced for the first time on appeal—that the contrary statements of Bank Bermuda, Ltd.'s chief officer "could have been an intentional diversion or deception," does not rescue the claim.

Koehler's statement that he was assured he could remain a director of The Reefs Ltd. is also inadequate to support a securities fraud claim. He was only assured he would be permitted to retain one share in The Reefs Ltd. so he would remain eligible for a directorship—hardly a promise of a major role in the company's future. Indeed, the September 28, 1992 letter from Bank Bermuda, Ltd. to Koehler's attorney explained that Koehler would remain qualified as a director "for the time being." Even if Bank Bermuda, Ltd.'s statements were misleading, which in context seems highly unlikely, they were immaterial.

Appellant's general statements that he would have "been in a position to block [the recapitalization] either by filing for injunctive relief in New York and/or Bermuda . . . by publicly exposing the scheme, or by seeking the assistance of regulatory authorities," are not enough. To demonstrate materiality, Koehler would have had to show that an available state court remedy existed and that he would have succeeded in preventing the loss suffered. *See Santa Fe Indus. v. Green*, 430 U.S. 462, 474 n. 14, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977); *Madison Consultants v. FDIC*, 710 F.2d 57, 64–65 (2d Cir.1983). He has not attempted to assert such facts. Hence, the dismissal of the federal securities law claims must be affirmed.

## II Denial of Permission to Amend

■ Less than a month after the inception of this litigation, Koehler filed a "First Amended Complaint." His efforts to file a second amended complaint met with less success. Plaintiff requested leave to amend the first amended complaint on June 11, 1998 in his supplemental memorandum of law in opposition to Dodwell, Bank Bermuda, Ltd., and The Reefs Ltd.'s (Bermuda defendants) motion to dismiss. The requested amendment would have reflected changes in the ownership of the stock in The Reefs Ltd. that originally had been Koehler's, but had subsequently passed out of his hands. Koehler also insisted that one of his supplemental memoranda contained a blanket request to

amend the pleadings should the court find them defective. Finally, in his Rule 59 motion for reconsideration, plaintiff again asked the trial court to allow him to amend the first amended complaint, without pointing to any new facts he wished to allege.

 Denial of leave to amend a complaint is reviewed under an abuse of discretion standard. *See Chill,* 101 F.3d at 271. Leave to amend should be freely granted, especially when dismissal is based on Rule 9(b). Leave may be denied so long as there is a good reason for it, such as futility, bad faith or undue delay. *See id.* at 271–72; *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962) (describing reasons for denying leave to amend).

In his requests to replead, Koehler did not identify any relevant new allegations he wanted to plead. Despite plaintiff's argument on appeal that district court procedures prevented him from filing a proposed amended complaint, his letters to the district court show that he could and did draw its attention to new facts that he considered relevant. The trial court concluded that any amendment would be futile because Koehler had not, and could not, plead the elements of a securities fraud claim. We agree with this assessment of plaintiff's complaint. The district court therefore acted well within its discretion in denying leave to amend.

### III Other Claims Against New York Bank

We also review the dismissal of these claims *de novo,* accepting the factual allegations in the complaint as true and drawing inferences in the light most favorable to the plaintiff. *See Desiderio v. National Ass'n of Sec. Dealers,* 191 F.3d 198, 202 (2d Cir.1999).

The district court correctly dismissed all the claims against New York Bank. Its only act that forms the basis of a claim was the October 9, 1991 assignment of the New York loan to Bank Bermuda, Ltd. Plaintiff does not challenge the validity of the assignment itself, but rather insists that as a "deceptive device" it was part of Bank Bermuda, Ltd.'s overarching wrongful scheme. However, the complaint alleges that the overarching scheme itself, that is, the Macdonald Plan, was first hatched in December 1991. If no scheme was in place in October 1991, then New York Bank's assignment of the loan could not have been the act of a co-conspirator. The district court correctly rejected appellant's alter ego theory on similar grounds. Koehler does not allege that New York Bank acted as Bank Bermuda, Ltd.'s instrumentality with regard to anything relevant after the loan was assigned. Because the loan assignment was prior to and separate from the allegedly wrongful scheme, New York Bank is not subject to any liability for it.

On appeal, plaintiff contests the district court's dismissal of Counts III (fraudulent conveyance) and V (breach of fiduciary duty and/or intentional interference with contractual relationship). Even assuming that plaintiff is right and the trial court's conclusion that he abandoned those counts was wrong, the allegations set out in these counts failed to state a claim on which relief may be granted. Count III of plaintiff's complaint essentially alleges that under Dodwell's direction The Reefs Ltd. may have transferred some of Dodwell's proceeds of the Macdonald Plan recapitalization to New York Bank without consideration in order to render Dodwell insolvent. This fails to allege any wrongful intent by New York Bank. Nor does it allege facts supporting Koehler's assertions that New York Bank was involved in a wrongful scheme to harm him. In his brief on appeal, Koehler repeatedly disclaims any reliance on the idea that New York Bank was involved in the Macdonald Plan.

Count V seeks to implicate New York Bank in Dodwell's alleged breach of

his duties to Koehler, through use of its "overweening financial position and influence." Because the count rests on Dodwell's ultimate rejection of the Combined Equity Plan, which occurred well after the New York Loan assignment, it too must fail. Thus, the district court appropriately dismissed all the claims against New York Bank.

### IV Alienage Jurisdiction

 Having dismissed Koehler's other claims, we turn to the question of subject matter jurisdiction over the state law claims against the Bermuda defendants. Because the complaint was dismissed for lack of jurisdiction, we again review *de novo*. *See Mackensworth v. S.S. American Merchant*, 28 F.3d 246, 252 (2d Cir. 1994). If jurisdiction exists, its basis must be 28 U.S.C. § 1332(a)(2), which confers federal jurisdiction over cases between "citizens of a State and citizens or subjects of a foreign state," or, as Article III of the Constitution states when setting out the judicial power of the United States: "[it] shall extend to all Cases ... between a State, or the Citizens thereof, and foreign States, Citizens, or Subjects." U.S. Const. art. III, § 2, cl. 1. Such jurisdiction is called alienage jurisdiction.

Koehler contends that the Bermuda defendants are "citizens or subjects of a foreign state" within the meaning of 28 U.S.C. § 1332(a)(2). The Bermuda defendants disagree, relying heavily on *Matimak*, where we held that a Hong Kong corporation was not a "citizen or subject" of a "foreign state" for purposes of alienage jurisdiction. *See Matimak*, 118 F.3d at 78. It is established law that for purposes of alienage jurisdiction, a corporation is a citizen or subject of the entity under whose sovereignty it is created. *See id.* at 79. That the United States government does not recognize Bermuda as a foreign state is also undisputed. *Matimak* concerned a corporation chartered in Hong Kong, which was then a British Dependent Territory. Because Bermuda is also a

British Dependent Territory, *Matimak* governs the jurisdictional issue in this case. The district court therefore lacked subject matter jurisdiction over the state law claims against the Bermuda defendants.

### CONCLUSION

Accordingly, we affirm the district court's orders dismissing the claims against New York Bank and the federal securities claims for failure to state a claim and dismissing the state law claims against the Bermuda defendants for lack of subject matter jurisdiction.

Affirmed.