UNIVERSAL REINSURANCE COMPANY, LTD., Hal Forkush, and Colin James, Plaintiffs–Counter–Defendants–Appellants,

v.

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, Defendant–Counter–Claimant–Appellee.

Docket Nos. 99–9191, 01–7759.

United States Court of Appeals, Second Circuit.

Submitted: March 20, 2002.

Decided: Nov. 15, 2002.

Andrew W. Heymann (David P. Stich, of counsel), Solomon Pearl Blum Heymann & Stich LLP, New York, New York, submitted letter briefs for Plaintiffs–Counter–Defendants–Appellants.

Lawrence R. Samuels, Ross & Hardies, Chicago, Illinois, submitted a letter brief for Defendant–Counter–Claimant–Appellee.

Before: WINTER and SACK, Circuit

Judges, and HODGES, District Judge.*

WINTER, Circuit Judge.

This appeal involves a dispute arising from contract negotiations between plaintiffs Universal Reinsurance Company, Ltd. ("Universal"), Hal Forkush, and Colin James, and defendant St. Paul Fire and Marine Insurance Company ("St.Paul"). We affirm the dismissal of the complaint because the presence of indispensable parties would destroy diversity of citizenship. We affirm the judgment on defendant's counterclaims against James, who has diverse citizenship. In light of a recent Supreme Court decision, we order entry of judgment against Universal as a party liable on the counterclaims. We affirm on the counterclaims even though the affirmance may have a preclusive effect on plaintiffs' affirmative claims.

## BACKGROUND

Briefly stated, the parties conducted negotiations with a view to St. Paul making a substantial investment in Universal. In the course of the bargaining, St. Paul made monetary advances but only on the express written condition that it could withdraw from the project at any time before execution of the closing documents and would, in the event of a withdrawal, be entitled to a refund of a designated percentage of its monetary advances. The closing never occurred.

Universal, Forkush, and James then brought this action against St. Paul asserting state law claims for breach of a preliminary agreement, a confidentiality agreement, and an oral contract, in addition to state law claims based on promissory estoppel, theft of trade secrets, and economic duress. Essentially, they claimed that the various writings constituted a binding preliminary agreement, or alternatively, that oral promises had modified the writings. Subject matter jurisdiction was allegedly based on diversity of citizenship. St. Paul answered with a general denial and asserted state law counterclaims for breach of contract and conversion, essentially seeking the refund of the stipulated percentage of its advances. St. Paul did not question the existence of diversity jurisdiction. Both parties moved for summary judgment. The district court denied plaintiffs' motion but granted St. Paul's motion. Accordingly, the court dismissed plaintiffs' claims for relief and awarded St. Paul $218,750 plus prejudgment interest on its counterclaims. *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, No. 95 Civ. 8436, 1999 WL 771357, at *12 (S.D.N.Y. Sept.29, 1999) (*"Universal I "*). Familiarity with that opinion is assumed.

On appeal, we *sua sponte* raised the issue of whether diversity jurisdiction existed. We held that Universal's presence as a party negated diversity of citizenship because, under our then-caselaw, a Bermuda corporation was not deemed to be a citizen or subject of a foreign state. *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, 224 F.3d 139, 140 (2d Cir.2000) (*"Universal II "*). We also determined that Forkush's allegations were insufficient for purposes of establishing diversity of citizenship because he alleged only that he was a citizen of the United States residing in Bermuda. *Id.* at 141; *see also Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 69 (2d Cir.1990) (finding failure of diversity jurisdiction where three partners in defendant law firm were U.S. citizens residing abroad). We remanded

---

* The Honorable William Terrell Hodges, United States District Judge for the Middle District of Florida, sitting by designation.

to the district court to determine (i) whether Universal was an indispensable party, and (ii) whether Forkush was a Bermudian domiciliary and not a citizen of a state, and, if so, whether he was an indispensable party. *Universal II*, 224 F.3d at 141. Familiarity with that opinion is assumed.

On remand, the district court concluded that Forkush was domiciled in Bermuda and not a citizen of a state. *Universal Reinsurance Co. v. St. Paul Fire & Marine Ins. Co.*, No. 95 Civ. 8436, 2001 WL 585638, at *1–*2 (S.D.N.Y. May 30, 2001) (*"Universal III "*). Diversity jurisdiction exists under 28 U.S.C. § 1332(a)(2) where the matter is between "citizens of a State and citizens or subjects of a foreign state." As a domiciliary of Bermuda, Forkush was neither and, therefore, as with Universal, his presence as a party negated diversity jurisdiction. *See Universal III* at *1–*2 (citing *Cresswell*, 922 F.2d at 68).

The district court was unable to salvage subject matter jurisdiction over plaintiffs' affirmative claims because it found that Universal and Forkush were indispensable parties on these claims. *Universal III*, 2001 WL 585638, at *4. It dismissed these claims without prejudice. *Id.* at *6. However, it salvaged partial jurisdiction by severing plaintiffs' affirmative claims from St. Paul's counterclaims pursuant to Fed. R.Civ.P. 21. *Id.* The district court determined that Universal and Forkush were not indispensable parties on the counterclaims because, *inter alia*, all plaintiffs were jointly and severally liable for the

payment of any refund to St. Paul. *Id.* at *4–*5. The district court then sustained the judgment on St. Paul's counterclaims against James, the sole remaining diverse plaintiff, but vacated it as to Universal and Forkush due to the lack of diversity. *Id.* at *4–*6. In doing so, it noted that plaintiffs' affirmative claims and St. Paul's counterclaims were independent of each other and that entering judgment on the counterclaims would not have a collateral estoppel effect on plaintiffs' assertion of their affirmative claims in state court. *Id.* at *5.

Plaintiffs once again appealed. They ask that the judgment against James on St. Paul's counterclaims be vacated and the entire case dismissed for lack of subject matter jurisdiction because adjudication of both the counterclaims and plaintiffs' affirmative claims required the presence of non-diverse, indispensable parties.

## DISCUSSION

Plaintiffs do not challenge the ruling that Forkush's presence as a party negates diversity of citizenship or that he is an indispensable party so far as plaintiffs' affirmative claims are concerned. Rather, they argue, first, that the district court erroneously applied Fed.R.Civ.P. 19(b) when it dismissed Forkush from the counterclaims, rather than dismissing the counterclaims themselves, by adopting a *per se* rule that a party who is jointly and severally liable is not an indispensable party.[1]

---

1. Fed.R.Civ.P. 19 reads:
   Rule 19.  Joinder of Persons Needed for Just Adjudication.
      (a) Persons to be Joined if Feasible.  A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already par-

ties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.  If the person has not

Second, plaintiffs contend that severance under Rule 21[2] was in error because St. Paul's counterclaims were inextricably intertwined with plaintiffs' affirmative claims, resulting in undue prejudice under Rule 19(b).

a) *The Effect of Traffic Stream*

■ Since the district court's ruling, a Supreme Court decision has altered Universal's status as a party for purposes of diversity. *See JPMorgan Chase Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 536 U.S. 88, 122 S.Ct. 2054, 153 L.Ed.2d 95 (2002). In *Universal II*, we held that the district court lacked subject matter jurisdiction over Universal under 28 U.S.C. § 1332(a)(2), because Bermuda-based corporations were not "citizens or subjects of a foreign state." 224 F.3d at 140–41 (citing *Koehler v. Bank of Bermuda (New York) Ltd.*, 209 F.3d 130, 139 (2d Cir.2000), *amended by* 229 F.3d 424 (2d Cir.2000));

*see also Matimak Trading Co. v. Khalily*, 118 F.3d 76, 86 (2d Cir.1997) (describing relationship between the United Kingdom and its territories as "too attenuated" for purposes of the relationship assumed by Section 1332(a)(2)). However, *Traffic Stream*, which involved a British Virgin Islands ("BVI") corporation, held that Traffic Stream was a citizen or subject of the United Kingdom because "[t]he United Kingdom exercises ultimate authority over the BVI's statutory law, including its corporate law and the law of corporate charter, and it exercises responsibility for the BVI's external relations." *Traffic Stream*, 122 S.Ct. at 2059. Because Bermuda is, like the BVI, an Overseas or Dependent Territory of the United Kingdom, *see Koehler*, 209 F.3d at 139,[3] Universal must be considered a citizen or subject of the United Kingdom for purposes of federal jurisdiction under Section 1332(a)(2).

been so joined, the court shall order that the person be made a party. If the person should join as a plaintiff but refuses to do so, the person may be made a defendant, or, in a proper case, an involuntary plaintiff. If the joined party objects to venue and joinder of that party would render the venue of the action improper, that party shall be dismissed from the action.

(b) Determination by Court Whenever Joinder not Feasible. If a person as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

(c) Pleading Reasons for Nonjoinder. A pleading asserting a claim for relief shall state the names, if known to the pleader, of any persons as prescribed in subdivision (a)(1)-(2) hereof who are not joined, and the reasons why they are not joined.

(d) Exception of Class Actions. This rule is subject to the provisions of Rule 23.

**2.** Fed.R.Civ.P. 21 reads:

Rule 21. Misjoinder and Non–Joinder of Parties

Misjoinder of parties is not ground for dismissal of an action. Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just. Any claim against a party may be severed and proceeded with separately.

**3.** In 1998, the Government of the United Kingdom announced that its "Dependent Territories" would now be referred to as "Overseas Territories." *Traffic Stream*, 122 S.Ct. at 2056 n. 1. *Koehler*, relying on the older terminology, referred to Bermuda as a "British Dependent Territory." 209 F.3d at 139.

*Traffic Stream* mandates that, if the judgment on St. Paul's counterclaims is sustained, Universal, as well as James, is jointly and severally liable on it, although Forkush would still be dismissed for lack of diversity. *Traffic Stream* does not, however, affect the district court's dismissal of plaintiffs' affirmative claims, because the district court found Forkush to be an indispensable party, *Universal III*, 2001 WL 585638, at *4, and his inclusion is independently fatal to jurisdiction on plaintiffs' affirmative claims. We therefore review the district court's ruling on the counterclaims as modified by *Traffic Stream*.

b) *Dismissal of Parties*

Plaintiffs contend that Forkush is an indispensable party with respect to the counterclaims and that the district court erroneously dismissed him in adopting a *per se* rule that a jointly and severally liable party is not indispensable under Rule 19(b). Plaintiffs argue, therefore, that there is no federal jurisdiction over the counterclaims. We disagree.

■ A district court's decision to dismiss parties under Rule 21 is circumscribed only by the "equity and good conscience test" of Rule 19(b). Rule 19(b) commands a district court to dismiss an action where it is impossible to have the participation of an indispensable party. We have held that the district court should take a "flexible approach" under Rule 19(b) when deciding whether parties are indispensable and that "very few cases should be terminated due to the absence of nondiverse parties unless there has been a reasoned determination that their nonjoinder makes just resolution of the action impossible." *Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d

Cir.1987) (citations omitted). Given the flexible nature of Rule 19(b) analysis, we review such decisions only for an abuse of discretion. *See Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 75 (2d Cir.1984); *see also Viacom Int'l, Inc. v. Kearney*, 212 F.3d 721, 725 (2d Cir.), *cert. denied*, 531 U.S. 1051, 121 S.Ct. 655, 148 L.Ed.2d 558 (2000).

■ The Memorandum of Understanding and addenda thereto that form the basis for St. Paul's counterclaims expressly provide that plaintiffs are jointly and severally liable for the payment of any refund owed to St. Paul.[4] We have held that Rule 19 does not mandate the joinder of joint obligors, because one of several joint obligors is not typically an indispensable party to an action against the others. *See Tehran–Berkeley Civil & Envtl. Eng'rs v. Tippetts–Abbett–McCarthy–Stratton*, 888 F.2d 239, 243 (2d Cir.1989) (citing *Greenleaf v. Safeway Trails, Inc.*, 140 F.2d 889, 890–91 (2d Cir.1944)); *accord Newman–Green, Inc. v. Alfonzo–Larrain*, 490 U.S. 826, 838, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) ("[G]iven that all of the guarantors ... are jointly and severally liable, it cannot be argued that [one of the guarantors] was indispensable to the suit.").

Plaintiffs argue that the district court violated Rule 19(b) by creating a *per se* rule regarding the indispensability of parties who are jointly and severally liable on a claim. However, the district court merely noted that "[w]ell established precedent holds that 'one of several joint obligors is not an indispensable party,'" *Universal III*, 2001 WL 585638, at *4 (quoting *Greenleaf*, 140 F.2d at 890), and then proceeded to analyze separately whether the dismissal of nondiverse parties on the

---

4. Plaintiffs assert in their affirmative claims that these parts of the Memorandum of Understanding were superseded by an agreement between the parties and that they are not liable under this more recent agreement.

counterclaims would cause undue prejudice. It concluded that it would not. *Id.* at *5.

Application of Rule 19(b)'s four factored test confirms that the district court did not abuse its discretion in concluding that Forkush was not an indispensable party with respect to the counterclaims. The Supreme Court, in *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968), paraphrased as follows:

> First, the plaintiff has an interest in having a forum.... On appeal, if the plaintiff has won, he has a strong additional interest in preserving his judgment. Second, the defendant may properly wish to avoid multiple litigation, or inconsistent relief, or sole responsibility for a liability he shares with another.... Third, there is the interest of the outsider whom it would have been desirable to join.... [A] court of appeals should ... take steps to protect the absent party, who of course had no opportunity to plead and prove his interest below. Fourth, there remains the interest of the courts and the public in complete, consistent, and efficient settlement of controversies. We read the Rule's third criterion, whether the judgment issued in the absence of the nonjoined person will be 'adequate,' to refer to this public stake in settling disputes by wholes.... After trial, considerations of efficiency of course include the fact that the time and expense of a trial have already been spent.

*Id.* at 109–11, 88 S.Ct. 733; *accord Envirotech Corp. v. Bethlehem Steel Corp.*, 729 F.2d 70, 73 (2d Cir.1984).

These factors weigh in favor of the district court's conclusion that Forkush is not an indispensable party. First, St. Paul won in the district court on the counterclaims, and, according to *Provident*, has an "interest in preserving [its] judgment." *Provident*, 390 U.S. at 110, 88 S.Ct. 733. Second, because Universal, James, and Forkush are all jointly and severally liable to St. Paul, there is no concern that Universal and James will be forced to share "sole responsibility for a liability" that they share with Forkush. *Id.* Third, because Forkush was a party to the judgment in *Universal I*, at least to that limited extent he did have the "opportunity to plead and prove his interest below." *Id.* at 111, 88 S.Ct. 733. Fourth, St. Paul's relief will be "adequate" in the sense used in *Provident*: it will be consistent with judicial economy, because the time and expense of resolving these issues in the district court and on appeal have already been spent. *Id.*

Relief will also be "adequate" in the sense implied by Rule 19(b): St. Paul will be able to recover complete relief from Universal and James. Indeed, dismissal of a claim for an inability to join additional parties is not warranted where complete relief is available from a remaining party. *See ConnTech Dev. Co. v. Univ. of Conn. Educ. Props., Inc.*, 102 F.3d 677, 682 (2d Cir.1996). Nor have plaintiffs suffered any deprivation of their due process rights as a result of the district court's decision. James and Universal have had their day in court. James and Universal can sue Forkush for contribution on the counterclaims, and if Forkush opts to resist that action, he will also have the opportunity to plead his case.

We recognize that not every factor listed under Rule 19(b) weighs in favor of the district court's decision to sustain the judgment on the counterclaims. For example, if the district court had ruled differently, St. Paul in all likelihood would have been able to seek similar relief in state court. Rule 19(b), however, does not require that every factor support the district court's

determination. It would be an abuse of discretion to dismiss an action under such circumstances. *See Jota v. Texaco Inc.,* 157 F.3d 153, 162 (2d Cir.1998).

For us, the critical factor is that a final judgment has issued in this case. Once the district court has proceeded to final judgment, "considerations of finality, efficiency, and economy become overwhelming," *Caterpillar Inc. v. Lewis,* 519 U.S. 61, 75, 117 S.Ct. 467, 136 L.Ed.2d 437 (1996), and federal courts are directed to salvage jurisdiction where possible. *See Newman–Green,* 490 U.S. at 836, 109 S.Ct. 2218 ("[R]equiring dismissal after years of litigation would impose unnecessary and wasteful burdens on the parties, judges, and other litigants waiting for judicial attention."); *see also Penteco Corp. Ltd. P'ship—1985A v. Union Gas Sys., Inc.,* 929 F.2d 1519, 1523 (10th Cir.1991) ("[W]here ... the action has resulted in a final judgment in the district court, despite an unnoticed potential jurisdictional defect, we believe the interests of justice, fairness and judicial economy require some additional opportunity to 'cure' such pleading defects ...."); *cf. Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.,* 9 F.3d 1236, 1238 (7th Cir.1993) ("[W]hen a plaintiff having elected federal jurisdiction goes all through the trial and appeal of his case without breathing any jurisdictional doubts, we think he should be deemed to have consented to the dropping of nondiverse parties if necessary to preserve federal jurisdiction. Otherwise a plaintiff who loses on the merits in the court of appeals could file a petition for rehearing pointing out the presence of the nondiverse [party] and be able to start over in state court."); *Knop v. McMahan,* 872 F.2d 1132, 1139 n. 16 (3d Cir.1989) ("To permit a case in which there is complete diversity throughout trial to proceed to judgment and then cancel the effect of that judgment and relegate the parties to a new

trial in a state court because of a brief lack of complete diversity at the beginning of the case would be a waste of judicial resources."). This caselaw strongly supports the district court's severance of Forkush.

Based on the district court's review of applicable factors under Rule 19(b) and the imperative to salvage jurisdiction where possible, we conclude that the court did not abuse its discretion in dismissing Forkush as a counterclaim defendant.

### c) *Severance of Claims*

Plaintiffs argue that it was error to sever the counterclaims from plaintiffs' affirmative claims and to address the merits of the counterclaims. They contend that, as a practical consequence of this ruling, they will be either collaterally estopped from raising their affirmative claims in state court or unfairly prejudiced by the district court's "persuasive precedent" in favor of St. Paul's counterclaims. They conclude, therefore, that the judgment on the counterclaims, combined with the dismissal of their affirmative claims, will unfairly prejudice them under Rule 19(b) and that St. Paul's counterclaims must also be dismissed.

Were we considering this case at the outset of the litigation, we might be inclined to agree that all claims should be dismissed under Rule 19(b). As plaintiffs correctly note, the claims asserted in their complaint regarding the existence of a binding investment contract are also asserted as defenses to St. Paul's counterclaims. Indeed, if a binding contract had been agreed to, St. Paul would not be entitled to a refund of advances. The argument that St. Paul's counterclaims are intertwined with some of plaintiffs' affirmative claims has merit, therefore, and in that respect we disagree with the district court. However, the fact that the various

claims and counterclaims are intertwined does not necessarily lead to the conclusion that the entire action must be dismissed.

We have set out above the considerable caselaw directing us to salvage jurisdiction where possible in litigation, such as this, that has proceeded to final judgment. In light of that imperative, we conclude that plaintiffs were not unduly prejudiced within the meaning of Rule 19 by the district court's decision to sever the claims even though, unlike the district court, we conclude that plaintiffs' claims of a binding investment agreement are intertwined with St. Paul's counterclaims for a partial refund of advances. To be sure, our ruling may have claim preclusion consequences for plaintiffs, an issue we do not decide, but their concerns merely reflect the hazards of bringing a diversity action in a federal court without determining that all parties are properly diverse. Plaintiffs exposed themselves to the risk that their jurisdictional problem might arise at any time as a result of Forkush's lack of citizenship in a state, a foreseeable possibility based on caselaw existing at the time this action was brought. *See Cresswell*, 922 F.2d at 68–69. Moreover, when plaintiffs brought this action, St. Paul's counterclaims were as inevitable as the sunrise at dawn. The resultant exposure of Universal and James to a judgment on St. Paul's counterclaims was the consequence of Forkush, Universal, and James invoking diversity jurisdiction notwithstanding Forkush's foreign domiciliary, as is Forkush's exposure to assertions of claim preclusion. Prejudice this may be, but plaintiffs could easily have avoided it in light of the preexisting caselaw defining diversity and directing federal courts to salvage jurisdiction where possible in cases such as this.

d) *The Merits*

We turn to the merits and affirm the judgment on St. Paul's counterclaims for substantially the reasons stated by the district court in *Universal I*.

### CONCLUSION

Because Universal is jointly and severally liable with James on St. Paul's counterclaims, we order entry of judgment against it; we disavow the district court's statement expressly negating any assertion of claim preclusion arising from this decision, an issue that is not before us. Otherwise, we affirm.